JOHN McCARTY, and Finch, Van Slyck, & McConville, Plaintiffs, v. CHARLES GOODSMAN, also Known as Charles W. Goodsman, Asa J. Styles, and Paul Campbell, Defendants, ASA J. STYLES, Appellant.

and

JOHN McCARTY and Finch, Van Slyck, & McConville, Plaintiffs, v. CHARLIE GOODSMAN, also Known as Charles W. Goodsman, Asa J. Styles, and Paul Campbell, Defendants and Respondents, and JOHN McCARTY, Appellant.

(L.R.A.1918F, 160, 167 N. W. 503.)

**Mortgage — acceleration clause in — default of mortgagor — mortgagee may declare whole sum due — limitations — statute of — when begins to run — how becomes operative.**

1. Where an acceleration clause in a mortgage provides that upon the default of the mortgagor it shall be legal for the mortgagee to declare the whole sum secured by the mortgage to be due, the entire debt does not become due upon the failure to pay an instalment note, so as to start the Statute of Limitations running against the action to foreclose, in the absence of a declaration to that effect by the holder of the mortgage.

**Mortgage — foreclosure for whole amount secured — declaration — Statute of Limitations — application of — personal liability on note.**

2. For the purpose of applying the Statute of Limitations, the cause of action to foreclose a mortgage is to be considered independently, and is not affected by the Statute of Limitations barring an action to enforce a personal liability upon the notes secured by the mortgage.

**Debt secured — payable in instalments — sums due at different dates — declaration that all is due on one default — absence of — cause of action — first accruing — date of maturity of last note.**

3. Where a mortgage is given to secure an entire debt which is represented by instalment notes falling due at different dates, and where it does not appear that the holder of the mortgage elected, under the acceleration clause, to treat the whole sum as due upon the default in the payment of one of the notes first maturing, the cause of action to foreclose the mortgage for the entire debt will be held to have first accrued upon the maturity of the last note.

Note.—Authorities passing on the question of effect of acceleration provision in mortgage or note to start the Statute of Limitations running are collated in notes in 12 L.R.A.(N.S.) 1190; 22 L.R.A.(N.S.) 1110; 51 L.R.A.(N.S.) 151; and L.R.A. 1918F, 169.

**Statute — susceptible of an interpretation that would render unconstitutional — due process of law — taking property without — constitutional — will be so construed if possible — limited application.**

4. Where the language of a statute is apparently susceptible of an interpretation which would render it unconstitutional as authorizing the taking of property without due process of law; if possible, the statute will be so construed as to render it constitutional, and to this end it may be given a limited application.

**Attorney's lien — foreclosure of — by advertisement — not authorized.**

5. Section 6878, Comp. Laws 1913, construed and *held* not to authorize the foreclosure of an attorney's lien by advertisement under the provisions of § 8185, Comp. Laws 1913.

**Papers subject to attorney's lien — sold at void foreclosure — claim upon which lien is based — purchaser at such sale entitled to benefit of — equity.**

6. The purchase, at a void foreclosure sale, of papers which are subject to an attorney's lien, is *held*, under the circumstances of this case, to entitle the purchaser in equity, to the benefit of the claim upon which the lien is based.

Opinion filed January 17, 1918.   Rehearing denied April 12, 1918.

Appeal from District Court, Pierce County, *A. G. Burr, J.*
Affirmed.

*Harold B. Nelson* and *Albert E. Coger,* for John McCarty, appellant and respondent.

An attorney's lien is strictly dependent upon continuity of possession. Where promissory notes are introduced and received in evidence upon a trial proceeding in district court, they become court files and are in the possession of the court, and thereafter if one of the attorneys obtains the consent of the court for their removal from the files of the cause in which they were used, to his own office and into his own hands, his possession of them is the possession of the court still, and he can claim no lien on them, as papers belonging to his client, in his possession. Heard v. Cherry, 145 Ky. 80; Pollock v. Aitkens, 4 S. D. 374; Wisconsin R. Co. v. Given, 69 Iowa, 581; Howe v. Mutual Reserve, 115 Iowa, 285.

An attorney's lien cannot be transferred to another, and such attempted transfer destroys it.   2 Mechem, Agency, 2d ed. § 2272; 6 C. J. 777.

The delivery for collection or other special purpose, by the pledgee to the pledgeor, does not extinguish the lien. 31 Cyc. 818, 819.

"A client's knowledge of facts affecting litigation is equivalent to the knowledge of his attorney." 6 C. J. 641, § 145; McNemar v. McNemar, 143 Ill. 184.

"The relation of attorney and client is created by contract, and litigants who have not thus assumed liability for attorney's fees cannot be held liable therefor, although they may have been benefited directly or indirectly by the attorney's services." Rices v. Patty, 60 Am. St. Rep. 510; Roselius v. Delachaise, 5 La. Ann. 481, 52 Am. Dec. 597; Chicago v. Larmed, 26 Ill. 218; Turner v. Meyers, 23 Iowa, 391; Atty. Gen. v. North American L. Ins. Co. 91 N. Y. 57, 43 Am. Rep. 648; Hand v. Savanah, 21 S. C. 162; Westmoreland v. Martin, 24 S. C. 238.

*Asa J. Styles,* Attorney *pro se,* and *Paul Campbell,* Attorney *pro se* and for Asa J. Styles, appellant and respondent.

"A lien is to be deemed accessory to the act for the performance of which it is a security, whether any person is bound for such performance or not, and is extinguished in like manner with any other accessory obligation." Comp. Laws 1913, § 6720.

Where the contract of pledge is merely collateral to the principal obligation it is given to secure, it is discharged by the payment of the principal obligation. So, too, the discharge of the principal obligation of the debtor in any other way will operate to discharge the contract of pledge. 31 Cyc. 851.

It is then fraud from any right of the pledgee to hold it for any other debt than that for which it was pledged." Comp. Laws 1913, § 6724; 31 Cyc. 817, 818, 853.

"The lien of a pledge is dependent upon possession, and no pledge is valid until the property pledged is delivered to the pledgee, or to a pledge holder as hereinafter prescribed." Comp. Laws 1913, § 6772.

"A mere agreement by the debtor that the creditor shall take and hold certain property as security for the debt is insufficient. Delivery is necessary." George v. Butler, 26 Wash. 456, 57 L.R.A. 396, 67 Pac. 263; Presidio County v. Bond Co. 212 U. S. 75.

"Where a debt is payable in instalments the general rule is that the statute begins to run as to each instalment, from the time when it falls

due, and that the creditor can recover only on those instalments falling due within the period before the beginning of the action." 25 Cyc. 1106; Davis v. Harrington, 53 Ark. 5, 13 S. W. 215; DeUprey v. De-Uprey, 23 Cal. 352; Washington L. & T. Co. v. Darling, 21 App. D. C. 132; Burnham v. Brown, 23 Me. 400; Baltimore Co. v. Barnes, 6 Harr. & J. 57; Wood v. Cullen, 13 Minn. 394 (365); Berry v. Dore-mus, 30 N. J. L. 399; Mason v. New York, 28 Hun, 115; Pelton v. Bemis, 44 Ohio St. 51, 4 N. E. 714; Adelbert v. Toledo, 5 Ohio S. & C. P. Dec. 14, 3 Ohio N. P. 15; Bush v. Stowell, 71 Pa. 208, 10 Am. Rep. 694; Overton v. Tracey, 14 Serg. & R. 311; Miles v. Kelly (Civ. App. 1894) 25 S. W. 724; Morrill v. Smith County (Civ. App. 1895) 33 S. W. 899; 33 Century Dig. Limit. of Actions, §§ 280, 281 et seq.; 25 Cyc. 1089, note 51.

Promissory notes payable in instalments are within the rule of the text. 25 Cyc. 1107; Burnham v. Brown, 23 Me. 400; Bush v. Stowell, 71 Pa. 208, 10 Am. Rep. 694.

Interest coupons outlaw independent of the principal debt. Clark v. Iowa City, 20 Wall. 583, 22 L. ed. 427; Amy v. Dubuque, 98 U. S. 470, 25 L. ed. 228; Griffin v. Macon County, 2 L.R.A. 353, 36 Fed. 885; Cases cited in 33 Century Dig. col. 496; 18 Am. Dig. Annual ed. Limit. of Actions, § 51 (Key Number).

Our Statute of Limitations begins to run not from the "maturity of the debt" nor from the time the debt "becomes due," but from the time "the cause of action has accrued." A cause of action may have accrued on a note, authorizing commencement of foreclosure of a mort-gage securing it, long before the debt represented thereby has by the terms of the note matured or become due, if the mortgage is so worded as to allow it.

Accelerating words in a mortgage and the fact that the holder fore-closes for the full amount of the secured debt are sufficient to show that the holder has elected to declare the entire amount due, on account of default in the payment of the first instalment. Doolittle v. Nurn-berg, 27 N. D. 521; Westcott v. Whiteside, 63 Kan. 49, 64 Pac. 1032; 25 Cyc. 1104; 7 Cyc. 858-861; 33 Century Dig. Limit. of Actions, § 281; Belloc v. Davis, 38 Cal. 242; Whitcher v. Webb, 44 Cal. 127.

These acceleration provisions in a mortgage are solely for the benefit of the mortgagee, so that the mortgagor cannot take advantage of it

in computing limitations. Richardson v. Warner, 28 Fed. 343; Batey v. Walter (Tenn.) 46 S. W. 1024; Wall v. Marsh, supra; Doran v. O'Neal, 37 S. W. 563; Boyd v. Buchanan (Mo.) 162 S. W. 1075; Trust Co. v. Light Co. (Miss.) 63 So. 575; Hemp v. Garland, 4 Q. B. 519; Reeves v. Butcher, [1891] 2 Q. B. 509; Bank v. Peck, 8 Kan. 660; Ryan v. Caldwell, 106 Ky. 543, 50 S. W. 966; Wheeler v. Howard, 28 Fed. 741; Harrison v. Reigor, 64 Tex. 89; Dodge v. Signor, 18 Tex. Civ. App. 45, 44 S. W. 926; Singleton v. Heriott, 37 S. C. L. (3 Rich.) 321; Snyder v. Miller, 71 Kan. 410, 69 L.R.A. 250, 114 Am. St. Rep. 489, 80 Pac. 970; Pierce v. Shaw, 51 Wis. 316, 8 N. W. 207; San Antonio v. Stewart, 94 Tex. 441, 61 S. W. 386; Manitoba Mortg. Co. v. Daly, 10 Man. 425; Westcott v. Whiteside, 63 Kan. 49, 64 Pac. 1032; Lycoming Co. v. Batcheller, 62 Vt. 148, 19 Atl. 982; Hunt v. Roberts, 45 N. Y. 691; Park v. Cooke 3 Bush, 168; Noell v. Gaines, 68 Mo. 649; Salmon v. Claggett, 3 Bland, Ch. 179; Green v. Frick, 25 S. D. 342, 126 N. W. 579; Moore v. Sargent, 112 Ind. 484, 14 N. E. 466; McFadden v. Brandon, 8 Ont. L. Rep. 610; Germond v. Hermosa Ice Co. 9 S. D. 387, 69 N. W. 578; Trust Co. v. Light Co. 64 So. 216, 63 So. 575; Spesard v. Spesard, 75 Kan. 87, 88 Pac. 576; Buchanan v. Berkshire Co. 96 Ind. 510; White v. Miller, 52 Minn. 367, 19 L.R.A. 673, 54 N. W. 736; Rasmussen v. Levin, 28 Colo. 449; Banzer v. Richter, 123 N. Y. Supp. 678; Malcolm v. Allen, 49 N. Y. 448; Brownlee v. Arnold, 60 Mo. 79; Kelley v. Kershaw, 5 Utah, 804, 14 Pac. 804.

"Where by the terms of the contract the failure to pay an instalment of a debt matures the whole debt, by the terms of the contract the Statute of Limitations runs from the first default." Ganser v. Ganser, 83 Minn. 199, 86 N. W. 18; 25 Cyc. 1107, and cases cited; Bank v. Peck, 8 Kan. 660; Ryan v. Caldwell (Ky.) 50 S. W. 966; Wheeler v. Howard, 28 Fed. 741; Boyd v. Buchanan, 162 S. W. 1075.

The statute runs from date of default, and not from date of election. Goss v. Lovell, 101 Pac. 72–75; San Antonio v. Stewart, 94 Tex. 441, 61 S. W. 386; Green v. Frick, 25 S. D. 342; Buchanan v. Berkshire Co. 96 Ind. 510; Doolittle v. Nurnberg, 27 N. D. 521.

"An attorney has a lien for a general balance of compensation in and for each case, upon any papers belonging to his client which have come

into his hands in the course of his professional employment in the case for which the lien is claimed." Comp. Laws 1913, § 6875, subd. 1.

An attorney's lien may be foreclosed by advertisement, and the foreclosure here of the Campbell lien transferred to Styles the title to the notes and mortgage on which the lien foreclosed was claimed. Comp. Laws 1913, § 6878; Black v. Elev. Co. 7 N. D. 129; Mitchell v. Elev. Co. 15 N. D. 495; Schlosser v. Moores, 16 N. D. 185; Wonser v. Elev. Co. 31 N. D. 382; Garr-Scott v. Clements, 4 N. D. 559; Grove v. Loan Co. 17 N. D. 352.

Plaintiff failed to show any interest in the property or existing indebtedness in their favor. Bank v. Bank, 8 N. D. 50.

"The assignee of a right of property or chose in action is concluded by a judgment for or against his assignor, in a suit begun before the assignment, but not where his rights vested prior to the commencement of the action." 23 Cyc. 1260, and cases cited.

"The rule with regard to privies is that its operation must be mutual upon both parties; both litigants must be concluded or the proceedings cannot be set up as conclusive for either." Hunt v. Haven, 52 N. H. 169 citing Bouv. Inst. 374; Sobey v. Beiler, 28 Iowa, 323; Coles v. Allen, 64 Ala. 105; Reynolds v. Ætna Co. 55 N. E. 310 and cases cited; Ward v. Boyce, 36 L.R.A. 549 and note.

BIRDZELL, J. This is an action for the foreclosure of a mortgage on 160 acres of land, securing the payment of $700 and interest. Judgment was entered in the district court of Pierce county in favor of the plaintiff, but it was ordered that certain of the proceeds of the foreclosure sale be paid to the defendant Styles as assignee of an attorney's lien, existing in favor of the defendant Campbell. The defendant Styles appealed from the judgment, demanding a review and trial *de novo* of certain questions of fact, which are set forth in seventy-seven specifications. The plaintiff McCarty, also appealed, specifying errors in the holding of the trial court sustaining the attorney's lien of defendant Campbell and entering judgment therefor in favor of Styles as assignee. The defendant and respondent Campbell moves to dismiss the latter appeal as to him, upon the ground that there has been no settlement of the statement of the case.

The facts necessary to an understanding of the questions involved in this matter are as follows:

In 1906 Styles purchased from a bank, of which his brother was cashier, a quarter section of land, subject to an encumbrance of $500 in the shape of a mortgage owned by the Union Central Life Insurance Company. It developed later, however, that, in addition to the mortgage mentioned, the former owner of the land, one Charles W. Goodsman, had given the mortgage in question in this suit, to secure the payment of five promissory notes, aggregating $700. These notes and mortgage ran to Theodore P. Scotland & Company. Soon after the discovery by Styles of the Scotland & Company mortgage, he brought an action (February, 1907) to quiet his title as against the mortgagee. In that action the validity of the Scotland & Company mortgage was upheld by the judgment of the trial court, which judgment was affirmed by this court in Styles v. Theo. P. Scotland & Co. 22 N. D. 469, 134 N. W. 708.

In the action to quiet title, the defendant Scotland & Company was represented by Paul Campbell, a party defendant in this action. Campbell had obtained possession of all the above-mentioned notes and introduced them in evidence to substantiate his client's claim. Not having been fully paid for his services, he later claimed an attorney's lien upon them.

In August, 1912, McCarty attempted to foreclose the mortgage in suit by advertisement, claiming to be the owner of the entire obligation secured thereby. In September a restraining order was obtained, restraining further foreclosure proceedings under the advertisement. This order was based upon three affidavits, setting forth, among other defenses, Campbell's lien. Nothing further having been done by way of realizing upon the securities, Campbell started foreclosure proceedings under his lien in August, 1913. After six days published notice, the lien was foreclosed by advertisement by the sale of all of the notes on August 28, 1913, at which sale Styles became the purchaser, the amount paid by him being $173.17. On October 18, 1913, or soon thereafter, the exact date being immaterial, this action was begun by McCarty and Finch, Van Slyck, & McConville for the foreclosure of the mortgage in question. The complaint alleges an assignment from Theodore P. Scotland & Company to John McCarty of all of the notes

excepting a $100 note, as of July, 1907, and an assignment of the $100 note to Finch, Van Slyck, & McConville as of October 1, 1904. It also disputes Campbell's lien and alleges the facts with reference to the foreclosure thereof. The defendants Styles and Campbell answered separately. The answer of the former covers fifteen printed pages and sets forth five defenses to the action. In reality, it is an argument of the case. Briefly stated the defenses set forth are a reliance upon the title secured through the foreclosure of the attorney's lien, an estoppel as against the plaintiffs to foreclose the mortgage on the ground that in the previous suit of Scotland & Company against Styles the notes and mortgages had been held to be the property of Scotland & Company; also that the defendants in this case are not precluded by the former judgment from showing that the mortgage itself is void by reason of not having been executed by the mortgagor.

The answer of Campbell denies the consideration for the alleged assignment of the $100 note from Scotland & Company to Finch, Van Slyck, & McConville, and alleges that the assignment of the four notes to McCarty was an assignment to him as trustee for the benefit of the creditors of Scotland & Company. Also that the Finch, Van Slyck, & McConville assignment was collateral to indebtedness which was afterwards fully paid; that the possession of the notes was not delivered to the assignees; that plaintiffs, by reason of their knowledge and acquiescence in his defense of the suit against Scotland & Company, are precluded and estopped as against him and his successor in interest to dispute the rights which Styles obtained as purchaser at the lien foreclosure sale.

The findings, conclusions, and judgment of the trial court are in accord with the questions and principles discussed in a comprehensive memorandum decision which was rendered in disposing of the case, and the questions which arise on Styles's appeal are foreshadowed in that opinion. The learned trial judge considered that four questions were involved. First, "What is the effect of the judgment and decree entered in the case of Styles v. Scotland & Company described in finding of fact number eight?" Second, "Has the Statute of Limitations run since said judgment and decree was entered, so as to bar this foreclosure sought in the complaint?" Third, "Did defendant Campbell have a lien on the personal property, to wit, the notes and mortgage sought to be fore-

closed in this action?" Fourth, "If such an attorney's lien existed, was it foreclosed?"

While the appellant Styles asks for a review of seventy-seven specifications of facts, the mere enumeration of which covers thirty-three pages of his brief, the real questions involved in this appeal are those relating to the propriety of the adverse decision of the trial court upon the four questions discussed in the memorandum decision, and the correctness of certain findings of fact necessary to sustain the decision and judgment thereunder. In the argument of the appellant Styles, the errors assigned are grouped under nineteen heads, and the legal propositions therein raised, which merit discussion, will be considered in the order appealing to us as most logical, and with such brevity as is consistent with a comprehensive review of the real questions presented on the record.

It is claimed that the plaintiff's action is barred by the Statute of Limitations. In support of this contention the appellant Styles invites our attention to the fact that two of the notes secured by the mortgage in question fell due October 1, 1903. This action was not commenced until October 18, 1913, or soon thereafter. The mortgage was given to secure a debt of $700, which was represented by five promissory notes, dated August 21, 1903, the amounts and maturity of which are as follows: $250, October 1, 1903; $50, October 1, 1903; $100, October 1, 1904; $50, October 1, 1905; and $250, October 1, 1906. The mortgage securing these notes contains an acceleration clause as follows: "And the said Charlie Goodsman does covenant and agree . . . to pay said sum of money above specified at the time and in the manner above mentioned. . . . And if default be made by the party of the first part in any of the foregoing provisions, it shall be legal for the party of the second part, its successors, and assigns, or its attorney, to declare the whole sum above specified to be due." The mortgage also contains a provision empowering the mortgagee to sell the premises under the statute in case of default in the payment of any part of the money due upon the notes. The argument is that inasmuch as the mortgagee had a right, immediately upon the default in the payment of the first notes, to foreclose the mortgage, and having allowed more than the statutory period to elapse since the first default before bringing this action, the action is barred by the statute. Comp. Laws 1913,

§ 7374. That this contention is unsound appears clear to us after consideration of the many authorities cited by counsel. The acceleration clause only gives to the mortgagee a right, upon default in any part, to declare the whole debt due. It is clear that such a provision does not operate automatically to make the whole sum due as a matter of law. It may well be, as contended by counsel, that it is not necessary for the mortgagee to take any affirmative steps whatsoever before bringing an action or initiating foreclosure proceedings, but from this it does not follow that there must not be an exercise of the option before the action or the right to foreclose matures. The bringing of an action is in itself a sufficient declaration that the remainder of the amount claimed is due, but without the bringing of an action and without other evidence of an exercise of the option it cannot be said that a cause of action has accrued. It is one thing to say that the bringing of an action is a sufficient determination of an option to declare the whole sum due (Doolittle v. Nurnberg, 27 N. D. 521, 147 N. W. 400), and quite another thing to say that the option must be held to have been exercised in the absence of any evidence whatever of an election. The logic of the appellant, if applied to a possible situation where more than ten years might elapse between the first default and the maturity of the last notes secured by the mortgage, would require a holding that the right to foreclose the mortgage upon the nonpayment of the last notes was barred before the arrival of the date of maturity fixed therein.

The authorities generally will be found to support the foregoing conclusion, where the acceleration clause is similar to that in the case at bar. See 27 Cyc. 1101; also Hall v. Jameson, 151 Cal. 606, 12 L.R.A. (N.S.) 1190, 121 Am. St. Rep. 137, 91 Pac. 518, and numerous cases cited in the L.R.A. note to the above case. The authorities, however, are divided as to the effect of a default where the acceleration clause is absolute as distinguished from optional. See the L.R.A. note, supra. But as we are not dealing with an acceleration clause which is absolute, we express no opinion as to which is the proper rule. Nor are we concerned with such a question as was before the supreme court of Missouri, in Boyd v. Buchanan, 176 Mo. App. 56, 162 S. W. 1075 (cited by appellant), where the stipulation was that "on failure to pay any instalment of interest when due, the holder . . . may collect the principal and interest at once." It was held in the latter case that the cause

of action *accrued*, within the language of the Statute of Limitations, at once, upon the default, and it will be observed that the acceleration clause said nothing about an option to declare any sum due. This case is readily distinguishable from the case at bar, and the acceleration clause involved therein may properly be classified as absolute. The same is true of the acceleration clause involved in the case of Central Trust Co. v. Meridian Light & R. Co. 106 Miss. 431, 51 L.R.A. (N.S.) 151, 63 So. 575, 64 So. 216.

In holding that the Statute of Limitations does not bar the action to foreclose the mortgage, we do not dispose of the whole question of the statute as presented by Styles's appeal. As to the first two notes, amounting to $300, it is not questioned that more than ten years elapsed between the date of their maturity and the bringing of this action. The question as to the running of the Statute of Limitations, as to the sum represented by these notes, introduces considerations not applicable to the attempt to invoke the statute as to the whole debt. It is a well-settled rule in this jurisdiction that the Statute of Limitations barring actions on notes, and the statute barring the remedy of foreclosure, are to be applied independently. A mortgage may be foreclosed, for instance, after the Statute of Limitations has barred an action on the notes for which the mortgage is security (see Satterlund v. Beal, 12 N. D. 122, 95 N. W. 518), and this rule has the support of the decided weight of authority. See Jones, Mortg. § 1204; also numerous cases cited in the note in 95 Am. St. Rep. 664. It has even been held in this jurisdiction that, in the absence of a special Statute of Limitations barring foreclosure by advertisement, such proceedings were not barred by the ordinary Statute of Limitations applicable to civil actions, and that a foreclosure by advertisement, in the absence of a special Statute of Limitations, may be resorted to years after an action on the note would be barred. Clark v. Beck, 14 N. D. 287, 103 N. W. 755. It is true conversely that an action to foreclose may be barred while the legal remedy of the creditor to collect the debt remains. Colonial & U. S. Mortg. Co. v. Northwest Thresher Co. 14 N. D. 147, 70 L.R.A. 814, 116 Am. St. Rep. 642, 103 N. W. 915, 8 Ann. Cas. 1160. Thus, the sole question presented by the invocation of the Statute of Limitations as to the first two notes resolves to this: For purposes of foreclosure and the application of the Statute of Limitations thereto, must

the accrual of the right to foreclose be controlled by the maturity of a portion of the obligations for which the mortgage is security, or, in the absence of a declaration of an option, may the mortgagee be considered as standing upon the singleness of his cause of action to foreclose, in which case it will be deemed to have first been perfected when the whole debt matures? The mortgage is given to secure the entire debt of $700, and the fact that the indebtedness is represented by instalment notes, maturing at different dates, cannot affect the creditor's right to stand upon the singleness of his cause of action to foreclose for the nonpayment of the entire debt, when all of it shall become due, in case the mortgagee has not elected to treat it all as due upon the default in the payment of an instalment. Since it does not appear that the holder of the mortgage declared the whole sum due, it must be assumed that he elected to treat his cause of action to foreclose the mortgage as a single cause, which was being held in abeyance, awaiting the maturity of the entire debt. It follows that the right to foreclose the mortgage for the nonpayment of the entire debt of $700 and interest did not arise until the maturity of the last note on October 1, 1906, and that the foreclosure action was not barred as to any portion of such indebtedness. See 27 Cyc. 1560.

Before passing to the next question to be considered, it is proper to remark that there is the gravest doubt in the minds of the members of the court as to whether the cause of action for the foreclosure of the mortgage, in any event, can be considered as having arisen upon the maturity of the first notes. It was established as a fact in the case of Styles v. Theo. P. Scotland & Co. 22 N. D. 469, 134 N. W. 708, that the Goodsman mortgage was executed and redelivered on October 5, 1904, more than a year subsequent to the maturity of the first notes; also that Goodsman did not obtain a receiver's receipt for the land covered by the mortgage until November 4, 1903; also that Goodsman left the state in November, 1903, and deeded the land to Styles's grantor, in October, 1904. But we have preferred to consider the propositions advanced by counsel under the most favorable interpretation possible of the facts in the instant case.

This brings us to a consideration of the foreclosure of the attorney's lien for the purpose of ascertaining what right Styles derived therefrom. This lien was foreclosed by a sale of the notes, pursuant to a notice

published in conformity with the requirements of § 8125, Comp. Laws 1913, governing the foreclosure of chattel mortgages by advertisement. The legality of this method of foreclosure is assailed by the respondent McCarty, who contends that the statutory provisions governing foreclosure by advertisement are not applicable to the foreclosure of an attorney's lien arising by operation of law. Section 6878, Comp. Laws 1913, is relied upon by the appellant as authority for the proceedings taken. Section 6878, Comp. Laws 1913, is the first of two sections, which comprise chapter 100 of the Civil Code. This chapter deals with the matter of "the filing and foreclosing of liens on personal property." Section 6878 is as follows: "Upon default being made in the payment of a debt secured by a lien upon personal property, such lien may be foreclosed upon the notice, and in the manner provided for the foreclosure of mortgages upon personal property, and the holder of such lien shall be entitled to the possession of the property covered thereby for the purpose of foreclosing the same. The costs and fees for such foreclosure shall be the same as are provided in § 8132. A report of such foreclosure shall be made in the manner set forth in § 8128; provided, that when the lien has not been filed in the office of any register of deeds then a report of such sale shall be filed in the office of the register of deeds of the county wherein the property is sold. Such liens may also be foreclosed by action as provided in chapter 29 of the Code of Civil Procedure."

The appellant argues with much force that the foregoing provision authorizes the foreclosure of all liens enumerated in the preceding chapters of the Civil Code, by advertisement, as well as by action; and the language of the section, when considered alone, is apparently susceptible of such interpretation. But when the section is examined in the light of the other statutory provisions respecting liens and their enforcement, and with due regard to the fundamental constitutional requirement of due process of law, it becomes quite apparent that the statute in question cannot properly be construed as authorizing the foreclosure of an attorney's lien in this manner. Of the liens provided by statute, there can be no doubt that mechanic's liens and miner's liens can be foreclosed only by action. See Comp. Laws 1913, §§ 6825–6841. Of the remaining liens, those for the service of sires, for furnishing seed, for threshing, and for performing farm labor, become

effective only upon filing in the office of the register of deeds a statement of the service rendered or upon the furnishing of the thing which affords the basis of the lien. See Comp. Laws 1913, §§ 6849–6852, 6855, 6858. The other liens are the lien for keeping stock, the lien of a vendor of real property for the unpaid purchase price, the lien of a vendor of personalty for the unpaid purchase price, the lien of a purchaser of realty for the amount paid, which arises in case of failure of consideration, liens for improvements on personalty, factor's lien, banker's lien, seaman's lien, officer's lien, innkeeper's lien, attorney's lien, and blacksmith's and machinist's liens for repairs. Foreclosure by advertisement is expressly excluded in the case of the liens on real estate, and it may safely be said that the procedure is wholly inappropriate as to the lien of a vendor of personalty. Section 6878 is not applicable to the latter, because the provision giving the lien makes it enforceable in like manner as if the property were pledged to the vendor for the price, and for the foreclosure of a pledge actual notice is required. Comp. Laws 1913, § 6786. As to the remaining liens, they are, for the most part, if not entirely, dependent on possession, and are of the character of those that could not have been foreclosed at the common law, either by sale upon notice or by suit in equity. Section 6878 was doubtless enacted for the purpose of giving to the holder of any of the various liens enumerated a right which would not exist except for the statute, viz., the right to realize out of the property subject to the lien the amount for which the property is held.

It will be noted that the statutory liens, with respect to their origin, are of two general classes,—those in which either actual or constructive notice to the owner of the property of the amount claimed, and to third parties, is required to be given before the lien becomes operative, and those in which no such notice need be given. The attorney's lien upon papers of his client in his possession falls within the latter class. As to liens of the second class, our basic inquiry is, Is the remedy of foreclosure by advertisement available? Without expressing any opinion as to the applicability of this remedy to liens of the first class, we do not hesitate to express the conviction that it is not available to holders of liens of the second class. In dealing with this question, it should be remarked at the outset that the remedy of foreclosure by advertisement is a harsh remedy and one readily capable of being abused to the

disadvantage of the one whose property is held by the creditor. A lien of the class under consideration arises by operation of law, and no notice whatever is required to perfect it. There need not even be a notice that any balance is owing to the attorney. The first and only notice required by law, if the contention of the appellant Styles is correct, is the notice of sale which is required to be published for six days under § 8125, Comp. Laws 1913. It will readily be seen that this interpretation of the statutes would result in transferring the property of a client, which had been intrusted to the attorney, to the purchaser at a foreclosure sale, not only with remarkable facility, but without any notice of any hearing of any sort for the purpose of determining the amount of indebtedness for which the lien is claimed.

It is true that § 6878, Comp. Laws 1913, makes provision for the releasing of an attorney's lien upon the execution of a bond in double the amount claimed, or in such sum as may be fixed by a judge, which procedure, if taken, would leave the attorney to a suit on the bond to determine the amount recoverable for his services; and that it is also provided that the lien will be released upon the failure of the attorney to furnish a bill of particulars of services within ten days after a demand therefor. But there is nowhere any requirement that the lienor shall serve notice of his claim or his lien. Such being the condition of the statutory law with respect to the lien of an attorney, the fundamental constitutional requirement of due process would not be satisfied by a statute that purported to authorize the transfer of title to such papers at a sale to be conducted upon six days' published notice. It is essential that at some time previous to such a final consummation there shall have been a reasonable notice of an appropriate hearing, in which the extent and validity of the claim could have been determined at the election of the debtor party. However appropriate such a procedure may be, as applied to liens for a fixed sum or for a claim, of which the lienee has had either actual or constructive notice before the lien arises (Martin v. Hawthorne, 5 N. D. 66, 63 N. W. 895), we are satisfied that it can have no proper application to a lien of the character in question.

As hereinabove pointed out, it is manifest that the broad language of § 6878, Comp. Laws 1913, cannot with propriety be construed as prescribing a procedure to be followed in foreclosing all liens upon personal property; for, as will be seen upon examination, the statutes au-

thorizing certain liens, such as mechanics' and miners' liens, are complete in themselves and authorize foreclosure by action; and the lien of a vendor of personalty, which is provided for in the chapter immediately preceding § 6878, is enforced in like manner as if the property were pledged for the price. As to such liens, § 6878 is therefore clearly inapplicable, and in order that it may not be open to the constitutional objection of violating the requirement of due process it is necessary to construe it as not applicable to those liens whose foreclosure by advertisement would amount to a legislative authorization to take the property of a lienee without due process of law.

It may be remarked in passing that the statutory provisions, governing foreclosure of mortgages upon personal property by advertisement, show upon their face that they were enacted in the light of the custom according to which the mortgaged property remains in the possession of the mortgagor, and that, while six days' published notice is all that is required to foreclose the mortgage by sale of the property, the mortgagee must first obtain possession of the property. This, in itself, will ordinarily operate to apprise the mortgagor of the approaching foreclosure, and will give him an opportunity to enjoin the contemplated sale, if any reasons exist therefor, and to remit the creditor to his right of foreclosure by action. Obviously when this procedure is undertaken with respect to property already in the possession of the one foreclosing, the likelihood that notice will reach the lienee is much less than in the case of mortgaged personalty.

Being of the opinion that the attorney's lien was never legally foreclosed, the question as to the right acquired by Styles as purchaser at the sale remains to be considered.

The trial court held that Styles stood in the position of an assignee of the attorney's lien. While this position is contested by the respondent McCarty, and while in his appeal he seeks to obtain a reversal of this ruling, we are not prepared to say that the conclusion is not warranted and the result justified upon a proper application of equitable principles. In a sense, this whole controversy arose over the fruits of the litigation in the former case of Styles v. Theo. P. Scotland & Co. 22 N. D. 469, 134 N. W. 708, and it is equitable to require that those who reap the benefits of that litigation should pay therefrom a proper fee to the attorney through whose efforts the suit was successfully ter-

minated. Where all the equities of a cause are presented to a court possessed of equity powers, in order to accomplish justice, the court may deal with a given subject-matter within its control regardless of the strictly legal aspects of the case. It matters little whether the abortive foreclosure can be considered sufficient from a legal standpoint to constitute Styles the assignee of Campbell's lien; it is but just that Styles should have the benefit of the reasonable claim of Campbell, who no longer asserts it as against him. As we view the record, Campbell's claim appears reasonable and just, and we do not feel warranted in disturbing the findings of the trial court regarding it.

In view of the conclusions reached upon the merits of this case, it is unnecessary to discuss the questions presented by the motion of the respondent Campbell. Neither is it necessary to consider separately the questions presented by McCarty's appeal as they affect the respondent Styles. The judgment of the trial court is in all things affirmed, without costs to either party, except as follows: Appellant McCarty shall pay to respondent Campbell $50, costs of this appeal, and the appellant Styles shall pay to McCarty a like sum as costs.

ROBINSON, J. (dissenting in part). Charles Goodsman owned the land in question, a quarter section in 21–153–72. To secure $700 and interest, according to five promissory notes, Goodsman mortgaged the land to Theo. B. Scotland Company. The mortgage is dated November 24, 1903, and is acknowledged and recorded October 5, 1904. Asa Styles acquired the Goodsman title and brought a suit to test the validity of the mortgage, and it was held valid. Styles v. Theo. P. Scotland & Co. 22 N. D. 469, 134 N. W. 708. In that groundless suit Paul Campbell was retained as attorney for the mortgagee, and he put in evidence the mortgage notes, which were obtained for that purpose from parties who held them as collateral, though there was no reason for obtaining the notes or putting them in evidence. After the trial Campbell secured possession of the notes by an order directing the clerk of the court to deliver them to him. Then he claimed a lien on the notes for $148.30 and sold the notes to Styles under an attempted foreclosure of his lien. On October 25, 1909, the mortgagee made to the plaintiff John McCarty an assignment of the mortgage and the notes. In August, 1912, he attempted to foreclose by advertisement. By order of the

court, a stop was put to such foreclosure on affidavits of Asa Styles, Charles Goodsman, and Paul Campbell, claiming that Styles had a valid defense as the owner of the land and the owner of the mortgage. The complaint is dated October 18, 1913. In August, 1916, a judgment was duly entered, directing the sale of the land to pay the mortgage debt, and that the alleged attorney's lien be first satisfied from the proceeds of the sale.

This is an action to foreclose a mortgage which the court has adjudged to be valid. Styles v. Theo. P. Scotland & Co. supra. The action is not barred by the Statute of Limitations, as it was commenced within ten years after the debt matured and came due. The facts stated show the defendant Asa Styles has no interest in or lien upon any of the mortgage notes. Styles appeals, and McCarty appeals from the part of the judgment in regard to the attorney's lien.

By his appeal Styles seeks to question and relitigate the validity of the mortgage, but that question has been fairly decided against him. Styles pleads that the action was barred because it was not commenced within ten years after the cause of action accrued. The cause of action did not accrue until ten years after the last three notes became due,— and the action was commenced in October, 1913. It is also claimed that Styles is the owner of the notes and mortgage under a pretended foreclosure of the attorney's lien, as if it were a chattel mortgage. Of course that is mere nonsense. The only real question is on the appeal of McCarty. He claims that neither Styles nor Paul Campbell ever had a lien on the notes, and that the court erred in decreeing that the lien claimed should be paid from the sale of the mortgaged premises. Certainly there was no occasion for putting the notes in evidence or for ever giving them to the attorney. He was not employed by the owner of the collateral notes, and he had no claim or cause of action against them on their notes, and his claim was not improved by transferring it to Styles. The judgment should be modified by striking out all that relates to the attorney's lien, and, as so modified, the judgment should be affirmed.

## On Petition for Rehearing.

BIRDZELL, J. The appellant Styles has called to the court's attention § 8078 of the Compiled Laws of 1913. The section is as follows: "In case of mortgages given to secure the payment of money by instal-

ments, each of the instalments mentioned in the mortgage shall be taken and deemed to be a separate and independent mortgage, and the mortgage for each of such instalments may be foreclosed in the same manner and with like effect as if a separate mortgage was given for each of such instalments, and a redemption of any such sale shall have the like effect as if the sale for such instalments had been made upon a prior independent mortgage." It is contended that the above section operates to mature the cause of action for the foreclosure of the mortgage as to each instalment at the maturity thereof. Conceding this to be the effect of the statute, it does not follow that it matures the cause as to the entire amount. Where a mortgage is given to secure an *entire* sum, it will give rise to a *cause of action* to foreclose the lien for the entire amount, only when the amount becomes due or is declared due under the acceleration clause. This cause of action may be treated by the mortgagee as being single and indivisible, notwithstanding one or more defaults affecting instalment notes. The effect of a statute such as that quoted above is merely to secure to the holder or holders of instalment notes the right to foreclose the lien of the mortgage applicable to each note, by enabling such holder or holders to exercise the power of sale, and to give a right of redemption from any such sale in like manner as if the instalments represented successive mortgages. The section has no application whatsoever to the right of foreclosure for the entire amount of the mortgage lien.

Considerable argument is expended in an effort to demonstrate that a right to foreclose the mortgage is barred by the Statute of Limitations, by reason of the fact that more than ten years elapsed between the bringing of the action and the maturity of the first instalment note. Throughout this argument counsel has apparently lost sight of the rule followed in the main opinion to the effect that the Statute of Limitations applicable to a cause of action on a note, and the statute applicable to a cause of action for foreclosure, operate independently of each other. We are not concerned here with a cause of action upon the notes. The action that is before us is one for the foreclosure of the lien of a mortgage in which the mortgagor has covenanted for a lien to secure the payment of an entire sum. This cause of action did not mature, as pointed out in the main opinion, until within ten years prior to the bringing of this suit.

In the petition for rehearing, counsel also contend that the plaintiffs and respondents are precluded from maintaining this suit by reason of the finding in the previous suit of Styles v. Theo. P. Scotland & Co. 22 N. D. 469, 134 N. W. 708, that Scotland & Company were the owners of the notes. This contention overlooks the effect of the other findings in the same case. The court in that action held that the mortgage was unpaid, and determined the amount as well as the nature of the lien. Styles v. Theo. P. Scotland & Co. 22 N. D. 479, 134 N. W. 708. It would, of course, have been competent for the appellant to have shown in this action that he had discharged a portion of this lien, or, if a portion of it was held by someone not a party to the proceeding, he could have had such party joined. His argument, however, stops short of this, and seeks by technicality to magnify the effect of the previous findings of ownership in favor of Scotland & Company. A finding of ownership in Scotland & Company certainly would not be *res judicata* as against the interest of a stranger to the proceedings acquired before the suit was instituted.

The petition for rehearing is denied.