BELLE ROSS HAHN *v*. D. K. ECKEL, *et al.*[*]

(*Knoxville*. September Term, 1926.)

Opinion filed November 20, 1926. ·

1. NEGOTIABLE INSTRUMENT LAW. Acts 1899, ch. 94. Construction. Shannon's Code, sections 3516a3; 3516a17; 3516a53 and 3516a66. Rights of Holder. Endorsement in blank and after maturity.

   Section 3516a3, defines a holder, as "the payee or endorsee of a bill or note, who is in possession of it, or the bearer thereof. Section 3516a17 provides that the instrument is payable to bearer "when the only or last endorsement is an endorsement in blank," held that having acquired a negotiable note by a regular chain of endorsements in blank, that the holder was one in due course, free from equities, and it would seem to follow that such holder occupies the same advantageous position, despite the fact that such purchase was made after maturity and that the negotiation was on endorsement in blank, and by section 3516a53, is deemed to have been effected before the instrument was delivered; provided the holder derives his title through a holder in due course, and who is not himself a party to any fraud or illegality affecting the instrument as provided by section 3516a66. (Post, p. 446.)

   Citing: Bearden v. Moses, 7 Lea (75 Tenn.), 459, the rule before passage of act of 1899.

2. EQUITY. Innocent purchaser. Constructive notice.

   The defense of an innocent purchaser will not avail, where such purchase is made with full constructive notice of the existence

---

[*]On right of purchaser of note after maturity from **bona-fide** holder, to the same protection as the latter, see annotation in 46 L. R. A., 784; 50 L. R. A. (N. S.), 83, 3 R. C. L., 1036, 1 R. C. L. Supp. 953; 4 R. C. L. Supp., 231.

of an indebtedness upon property secured by a recorded instrument.    (Post, p. 447.)

3. TRUST DEED.   Security lien note.   Laches.   Statute of Limitations.

While a note itself secured by a trust deed may be barred by the Statute of Limitations, it is well established that the indebtedness is not thereby extinguished, but that the lien of the trust deed continues subject to enforcement by proper proceedings in the hand of the holder. (Post, p. 449.)

4. TRUST DEED.   Release of lien.   Unauthorized.

The lawful holder of a lien note secured by trust deed duly recorded will not be prejudiced by an attempted release of such lien by another, not having authorized the payment or discharge of the indebtedness, or the release, or foreclosure of the trust deed.   (Post, p. 450.)

---

*Headnotes 1. Bills and Notes, 8 C. J., section 1289; 2. Bills and Notes, 8 C. J., sections 537, 685; 3. Appeal and Error, 4 C. J., section 3072; 4. Mortgages, 41 C. J., sections 463, 748; 5. Limitation of Actions, 27 C. J., section 23.

## FROM KNOX.

Appeal from the Chancery Court of Knox County.— HON. CHAS. HAYS BROWN, Chancellor.

FOWLER & FOWLER, for appellant.

GREEN & WEBB and R. M. McDONNELL, for appellee.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

This was a bill brought in 1924 by the holder of an indebtedness evidenced by a note in the principal sum of

$2500 to foreclose a deed of trust securing the indebtedness. The note and trust deed were executed by defendant Eckel, at the time holding the legal title to the land, on or about the 9th day of April, 1914, and the deed of trust was at once registered. The note was made payable to W. L. Jack one year after date, and C. B. Johnson was named as trustee. It is conceded that W. L. Jack, the original payee, had no interest in the transaction, but was an employee of and acting for S. R. Rambo. The note bears the endorsement, first, of W. L. Jack, and, second, of Rambo.

The complainant holding the note shows that she purchased the instrument from her brother for value, although it does not appear from her testimony at exactly what date. As bearing upon the negotiation thereof and the rights of the present holder, who admits that she is a purchaser from her brother after maturity, it appears that the endorsements in blank on the note of Jack and Rambo are both regular and are "deemed *prima facie* to have been effected before the instrument was over due." Shannon's Code, section 3516a53. (It has been the rule in this State before the passage of the act of 1899 that in the absence of proof that a negotiable note was transferred after maturity the presumption prevailed that it had been transferred before maturity. *Bearden* v. *Moses*, 7 Lea, 459.) As already indicated, the endorsement by S. R. Rambo was in blank and the purchaser from him was John M. Ross, from whom the complainant acquired the note. Conceding that the proof does not show affirmatively that Ross acquired the note by transfer from the last endorser before maturity, he is presumed to have so acquired it, in the absence of proof

to the contrary, in accordance with the statute above quoted.

Shannon's Code, section 3516a66, provides that "a holder who derives his title through a holder in due course, and who is not himself a party to any fraud or illegality affecting the instrument, has all the rights of such former holder in respect of all parties prior to the latter." Since the proof shows that the complainant is a holder who derived her title through a holder in due course, John M. Ross, unless she is shown to have been a party to some fraud or illegality affecting the instrument, it would seem to follow that she has all the rights of John M. Ross, and it remains only to consider what were his rights. Having acquired this negotiable note by a regular chain of endorsements in blank, he was a holder in due course, free from equities, and it would seem to follow that the complainant occupies the same advantageous position, despite the fact that her purchase was made after maturity and that the negotiation to her was by delivery only. By section 3516a17 it is provided that the instrument is payable to bearer "when the only, or last, endorsement is an endorsement in blank." Section 3516a3 defines holder as "the payee or endorsee of a bill or note, who is in possession of it, or the bearer thereof."

No defense was interposed by the original maker Eckel and no recovery is being sought against Jack or Rambo, the suit being limited to the foreclosure of the land. This right is contested by defendants Rutherford and wife holding title under Eckel who, it appears, was like Jack, a dummy, acting on behalf of one Galbraith, temporarily holding the title and executing the note and deed of trust.

Immediately after executing these papers he reconveyed the property to Galbraith who—following a sale and cancellation thereof to a Mrs. Sharp—conveyed the land to C. C. Rutherford and wife as unencumbered, by deed dated September 11, 1917. The record discloses that Mr. Galbraith and his brother, who appear to have been interested in the land addition of which the lot in question forms a part, turned over to S. R. Rambo a sum of money out of which they intended to satisfy the $2500 note sued on in this case, but either intentionally, or otherwise, it appears that application of this fund was made to the discharge of another indebtedness for which the Galbraiths were obligated to Rambo. So that in conveying to Rutherford and wife the Galbraith's were under the impression that the lien securing this indebtedness held by the complainant had been discharged. However, as indicated, the note was not in fact paid and of this transaction, which occurred in 1917, long after it must be presumed that the note had passed out of the hands of Rambo, the complainant had no notice. It further appears that in 1922 the Galbraith's, learning of this mistake in the application of the payment made in 1917 and that the lien had never been discharged, made further payment to Rambo and procured a quitclaim to be executed to the Rutherford's from a party to whom the lot had been sold under an attempted foreclosure brought about by Rambo in the *interim*.

The insistence made for the Rutherford's now is that they hold title to this lot free from the lien of the Trust deed securing the note in the hands of the complainant, basing this contention upon several grounds, (1) that the complainant having acquired the note after maturity

holds it subject to either one or both of the attempted payments made to Rambo by Galbraith in 1917 and 1922.; (2) that, by reason of the character of the dealings shown by the record to have taken place between the complainant and Rambo with respect to this note and other transactions, Rambo was constituted her Agent with authority to accept payment of the note and to foreclose the trust deed; and, (3) that the laches and other conduct of the complainant were such as to estop her from setting up rights under this trust deed against Rutherford and wife, alleged to be innocent purchasers.

The Chancellor and the Court of Appeals have concurred in holding that no relation of agency existed and that Rambo had no authority to collect the note or foreclose the trust deed, and, further, that the facts established do not sustain the theory of laches and estoppel. This concurrent finding must be treated by this court as conclusive on these questions of fact. We find nothing in the record to sustain the insistence that Rutherford and wife were innocent purchasers, in view of the fact that they purchased with full constructive notice of the existence of this trust deed indebtedness secured by a recorded instrument. It is quite apparent that they did not purchase upon the strength of an examination of the title, but relied wholly upon the covenants contained in the deed under which they bought.

The *status* of the complainant as the holder of this note, although purchased after maturity, has heretofore been discussed. While the note itself was barred by the Statute of Limitation before the filing of the bill, it is well established that the indebtedness was not thereby extinguished, but that the lien of the trust deed continued, sub-

ject to enforcement by proper proceedings, in the hands of the holder. The complainant having acquired this note from a holder in due course took it free from all equities, if any existed, at the time of her purchase, and the record failing to show that she has in any way, or any time since her purchase, authorized the payment or discharge of the debt, or the release or foreclosure of the trust deed, it results that the decree of the Court of Appeals must be affirmed.