MAYOR AND ALDERMEN OF TOWN OF MORRISTOWN *v.* DAVIS
*et al.**

*(Knoxville,* September Term, 1937.)

Opinion filed Nov. 27, 1937.

*This case reprinted and annotated in 113 A. L. R., 1164.

TAYLOR & McCANLESS, of Morristown, for Mayor and Aldermen.

JOHN R. KING, of Morristown, for R. C. DAVIS and others.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

This is a bill filed on the 24th day of June, 1936, to enforce liens for unpaid balances on serial obligations for tax assessments levied on abutting property for street improvements, under chapter 501, Private Acts of 1911, as amended. The chancellor overruled a demurrer raising the bar of the statute of limitations of ten years, and defendant John R. King, only, has appealed.

The bill shows that the assessments were made on the 25th day of August, 1925, on which day the first of the series of ten payments maturing annually became due. It was not paid, and became delinquent ninety days thereafter; that is, November 25, 1925. It thus appears that the suit was not brought until seven months· after the expiration of ten years from the date when the first installment payment became delinquent. But, the bill also shows that, in September, 1929, a few days after the maturity of the .fifth of the ten annual serial payments, the defendant King paid the five installments then due, together with interest thereon according to the terms of the obligations, and the suit now pending seeks to recover only the five installments thereafter maturing, with interest thereon.

The insistence for appellant King is that, although not barred otherwise by the terms fixed for maturity, these later maturities now sued on are barred by virtue of an acceleration clause found in section 18 of the aforesaid act of 1911, which section, after providing in detail for the creation of the serial obligations, and for foreclosure in case of default, reads as follows:

"Provided, however, that upon default for the period of thirty days in the payment of any installment and interest thereon the entire unpaid assessment shall immediately become due and payable, and the lien thereon may be foreclosed and collection enforced by the municipality as above set forth or by a suit at law or in equity."

The theory advanced for appellant is that immediately upon default in payment of the first maturing, or "cash payment," installment the provision for acceleration automatically became operative, and the statute began to run from that time against all the remaining installments.

There is no suggestion that the town authorities ever at any time, in any way, undertook to declare the obligations due upon default, until this suit was brought. It seems clear that the provision for the maturing of remaining installments of a series of installment payments upon default in payment of any one is for the benefit solely of the holder, and an option in him is plainly implied.

The question is not an open one in this state. Two cases directly in point are *Wall* v. *Marsh*, 68 Tenn. (9 Baxt.), 438, opinion by MR. JUSTICE McFARLAND, and *Batey et ux.* v. *Walter et al.* (Tenn. Ch. App.), 46 S. W.,

1024, affirmed by this court December 14, 1887, opinion by NEIL J., later for years Chief Justice of this Court.

Learned counsel seek to distinguish this case from those contract cases in which an option is expressly reserved to the holder to invoke or apply the acceleration provision.

In neither of these cases above cited was there an option expressly reserved to the holder. In both the provision for acceleration was, as here, "direct and positive," to quote the words of NEIL, J., in rejecting recognition of the distinction here urged. The headnote to *Wall* v. *Marsh* clearly states the holding well reasoned in the opinion. It reads:

"A stipulation in a promissory note, bearing interest payable annually, that upon a failure to pay interest annually the note shall be due, is a provision for the benefit of the payee, which he may waive, and cannot be taken advantage of by the maker of the note."

In the Batey Case, two notes were involved, and the plea of the ten-year statute was directly in issue. The clause in the notes read as follows: "If either of said notes should not be paid at maturity, or within thirty days after demand for the same, after they shall become due, then they shall both become due."

The learned justice said:

"It is contended by the original complainant that, the first note not being paid at maturity, the second note also became due at once under the terms of the mortgage; therefore that 10 years elapsed from the legal maturity of the second note before the filing of either the original bill or cross bill. It is also contended, if this position is erroneous, still that the mortgage was an existing lien at the date of the passage of the act,

and must have been enforced within 10 years from the date of the act. The act was passed on the 20th of February, 1885. Under the first contention it is insisted, therefore, that the bar of the statute ran against the mortgage on the 18th of February, 1896, and under the second contention that it ran against the mortgage on the 20th of February, 1895; so that, in either event, it is claimed by the complainant that the mortgage is barred under the act.

"The first contention is thoroughly met by *Wall* v. *Marsh*, 68 Tenn. (9 Baxt.), 438. See, also, a recent discussion on the same subject by this court in the case of *Doran* v. *O'Neil*, 37 S. W., 563. It is shown in the authorities referred to that provisions of the character appearing in the mortgage, above copied, are intended for the benefit of the mortgagee, and not for the mortgagor, and that the latter cannot take advantage of them. The provisions in each of the cases referred to were quite as positive and direct as those appearing in the mortgage we have under consideration. We deem it unnecessary to further discuss this subject."

We find nothing in later opinions of this court at variance with these holdings. On the contrary, while not dealing directly with this particular question, expressions in the opinion of MR. JUSTICE GREEN in *White* v. *Hatcher*, 135 Tenn., 609, at page 616, 188 S. W., 61, seem to recognize that a note is not matured by operation of an acceleration clause until exercise of his option by the holder. And in two very recent opinions by MR. JUSTICE MCKINNEY, *National L. & A. Ins. Co.*, v. *Varner*, 171 Tenn., 95, 100 S. W. (2d), 662, and *Davis* v. *Union Planters Bank*, 171 Tenn., 383, 103 S. W. (2d), 579, 582, the first discussing the effect of an acceleration

clause upon the liability of indorsers, and the second, upon the negotiability of paper, the acceleration clauses appear to be recognized as operative at the option of the holder. Indeed, in the course of the opinion in the latter case it is incidentally remarked that, "the holder can ignore the acceleration clause," etc.

As pointed out in some opinions, a rule which left no option to the holder would frequently work a hardship on the maker, tending to complicate the granting to him of indulgence.

A number of courts of other jurisdictions have approved a contrary holding. See note following *Perkins* v. *Swain* (35 Idaho 485, 207 P., 585), published in 34 A. L. R., 894. Tennessee is classified by this annotator as holding to the views heretofore indicated.

█ Nor do we find any reason for applying to a statutory provision a different rule of construction, in the regard under consideration, from that to be given a private contract, as insisted for appellant King. Both are alike for the benefit of the holder; a right to be exercised by him at his option upon default.

Learned counsel for appellant has filed since the hearing an additional argument which he devotes exclusively to the insistence that the obligations sued on do not come within the rulings on contracts generally, because the obligations arise out of a statute, but no authority is produced sustaining this view. That the serial maturities are provided for by statute does not appear to us to affect the principle that the provision for maturity of future payments is for the benefit of the holder of the debt, here the Town of Morristown. When the taxpayer selects the method of payment in installments, he adopts and enters into this contract with

the municipal corporation, authorized by its charter, with all its incidents. The right of the town to accelerate the maturities upon default is none the less a right reserved to the holder to be exercised at its election. The only case coming to our attention in which the effect of default in payment of special tax assessments was considered is *Burnes* v. *Ballinger,* 76 Mo. App., 58. See note in 34 A. L. R., 902. In that case the statutory provisions and the facts otherwise differ from those in the case at bar to such extent that the holding is not applicable here, but it is significant that no distinction was suggested between the effect to be given the acceleration clause in a town charter tax provision and the same clause in any other form of contract.

Moreover, in yet another view, under the facts here appearing, appellant seems cut off by equitable considerations from relying on the bar of the statute.

■ ■ It is argued for the town that the payment made by the obligor, in September, 1929, of all the installments which had matured to that date, in full with interest, was effective to wipe out all previous defaults and toll the running of the statute, even if the acceleration clause in the statute should be given an automatic effect. This would seem to be so, in reason and on authority. In 37 C. J., at page 851, notes (d) and (e) to the text, discussing "Acceleration of Maturity," bear directly on this question. Note (d) reads: "By accepting payment after default the creditor waives the default. *Belloc* v. *Davis,* 38 Cal., 242." And note (e) reads as follows: "Effect of default obviated. Where the mortgagee exercises his option, declares the entire debt due at once because of a default in the payment of interest, and institutes foreclosure proceedings, but af-

terward withdraws his proceedings upon payment of all past-due interest by the mortgagor, and the interest is thereafter kept up promptly, the statute does not run in favor of the mortgagor from the time of the original default and the declaration of the debtor thereon; and the mortgagor is estopped, by his conduct, to make such a contention. *California Sav., etc., Soc.* v. *Culver,* 127 Cal., 107, 59 P., 292; *Lovell* v. *Goss,* 45 Colo., 304, 101 P., 72, 22 L. R. A. (N. S.), 1110, 132 Am. St. Rep., 184; *Clause* v. *Columbia Sav., etc., Ass'n.,* 16 Wyo., 450, 95 P., 54.''

The cited early case of *Belloc* v. *Davis,* is well reasoned. The default was in the payment of an interest installment, but the same principle applies as when the default is in payment of a serial note. We quote at some length from the opinion:

''Our Statute of Limitations requires that an action to foreclose a mortgage shall be commenced within four years from the time 'when the cause of action accrues.' The question for our decision, therefore, is, when did this cause of action accrue, in the sense of the statute? Did the statute commence to run from the time of the first default in the payment of interest, or only on the expiration of the term of credit specified in the note, to wit, six months from its date?

''The question is novel, and somewhat embarrassing; but our conclusion is, that the cause of action, within the true meaning of the statute, accrued at the expiration of the credit fixed by the note, to wit: six months after its date. The provision in the note, to the effect that in case of a default in the payment of interest, the whole amount of principal and interest shall 'become due and payable immediately upon such default,' is evi-

dently in the nature of a penalty, inserted for the benefit of the creditor, and as an incentive to the debtor to stimulate him to the prompt payment of the interest, in order to avoid a forfeiture of the credit allowed by the note. Being in the nature of a penalty, inserted for the sole advantage of the creditor, it was competent for him to waive the benefits which it secured to him, as the plaintiff in this case has done, by accepting payment of the interest after default made. If the cause of action accrued, in the sense of the statute, on the first default in the payment of interest, and the plaintiff's right of action, then assumed a character so fixed and definite, that it was not in his power to waive it, as is claimed by the defendants, this strange result would follow, to wit: That if the plaintiff, on the next day after the default, had accepted payment of the interest due, he could, nevertheless, immediately after, have maintained his action to compel payment of the whole debt, on the ground that the credit had been irrevocably terminated by a default in the payment of interest for a single day, notwithstanding it had been paid and accepted on the following day. In this case, after several defaults, all the interest was paid and accepted up to the 11th day of December, 1862; and, supposing the note to have been payable five years after date, if the plaintiff, on the following day, had commenced his action to foreclose his mortgage for the principal sum, claiming that the credit had been forfeited by a failure to pay the interest at maturity, it is quite manifest he could not have maintained the action, for the reason that he had waived the forfeiture by accepting payment after default made. Or, to illustrate the proposition a little more forcibly, we will suppose the case of a promissory

note payable ten years after date, with interest payable monthly, and with a clause that the principal is to become due on a failure to pay the interest, as in this case. The interest for the first month is not paid precisely on the day it became due, but is paid and accepted on the following day, and thereafter, for three years, is paid punctually at maturity every month; and whilst being so paid, and without any new default, the creditor brings his action to collect the principal sum, on the ground that the credit had been forfeited by a failure to pay the first month's interest for a single day, three years before. To hold that the action could be maintained, under these circumstances, would be repugnant to every principle of reason and justice, and shock the common sense of mankind. But if the argument for the defendants be sound, the creditor could not only maintain the action in the case supposed, but would be obliged to institute it within four years from the time of the default, on pain of losing his entire debt by the bar of the Statute of Limitations. We deem this to be altogether a too narrow and technical construction of the statute, which, though designed to be a statute of repose, was never intended to work such hardship as this.

"We perceive no difference whatever between the principle involved in this case and those growing out of leases, containing a clause that the term shall cease, and be absolutely determined, by a default in the payment of rent. In such cases, it is well settled that if the landlord, after the default, accepts the rent, he thereby waives the forfeiture, and cannot afterwards insist upon it; and much less will the tenant be allowed to say that he is discharged from his covenants by his own default in the payment of rent."

Suppose the controversy between the town and this taxpayer were presented in the reverse; that following indulgence to the taxpayer in the enforcement of his payments for five years and a full settlement of all the obligations which had matured to that date according to their terms, on the next day the town had proceeded to foreclose in collection of the remaining installments on the theory here advanced by the taxpayer, that the remaining installments had been matured by the initial default. Would not the taxpayer have been here protesting indignantly and with good reason? If this harsh rule may be invoked by the taxpayer, it works both ways.

In one of the California court opinions above mentioned, it is remarked, in effect, that when a settlement has been fully made of all past-due installments, waiver should be applied to both maker and holder, and both should be held to be estopped from relying on the previous default. This seems to us an additional and equitable ground for sustaining the decree of the chancellor, which is affirmed.