CITY OF JACKSON *v.* WILLETT.

(*Jackson*, April Term, 1942.)

Opinion filed May 29, 1942.

Moss & Benton and Jack Manhein, all of Jackson, for complainant.

Pierce Winningham, Jr., of Jackson, for defendant.

Mr. Justice Chambliss delivered the opinion of the Court.

To the suit of the city, brought December 20, 1940, to collect seven unpaid installments of abutting paving taxes, assessed under an ordinance enacted in 1924, pursuant to Chapter 18 of the Acts of 1913, First Extra Session, as amended by Chapter 526, Acts (Private) of 1921, the defendant plead the ten-year Statute of Limitations. Code 1932, sec. 8601. The assessment was made payable in ten installments of $36.90 each, one falling due December 20, 1925, and one each December 20th thereafter, all bearing interest at 6 percent per annum. The first three maturing were paid. The first due was paid, with interest, January 10, 1927, and on December 29, 1927, the next two maturing were likewise paid, with interest. No further payments had been made prior to the filing of this bill. The Chancellor sustained the plea as to the two assessments which fell due on the 20th of December in the years 1928 and 1929, and dismissed the suit as to these two of the seven unpaid assessments; but he overruled the plea as to the five assessments which fell due December 20, 1930, to 1934, inclusive, and gave judgment for the amount thereof, with interest.

The defendant has appealed and asserts that the bar of the statute applies also to these five last maturing installments. The theory advanced is that by the terms of the paving tax statute, the entire assessment was

made payable in cash and became due thirty days after the assessment was made effective, in November, 1924.

The pertinent part of Chapter 18, Acts of 1913, Sec. 7, First Extra Session, as Amended by the Act of 1921, reads as follows:

"All assessments levied by virtue of this Act shall be due and payable within thirty days after the assessment is made final as aforesaid; but at the election of the property owner, to be expressed by notice as hereinafter provided, said assessment may be paid in ten equal installments the first of which shall be made within thirty days after the assessment is made final, and the remainder, in nine annual installments thereafter, and shall bear interest at the rate of six per cent per annum, interest payable semiannually; that a property owner desiring to exercise the privilege of payment by installments shall, before the expiration of the thirty days aforesaid, enter into an agreement in writing with the municipality that in consideration of such privilege he will make no objection to any illegality or irregularity with regard to the assessment against his property, and will pay the same as required by law, with the specified interest; that such agreement shall be filed in the office of the said City Clerk or person designated by the municipality, and in all cases where such agreement has not been signed and filed within the time limited, the entire assessment shall be payable in cash, without interest, before the expiration of said thirty days; *provided*, that any property owner who shall have elected to pay his assessments in ten annual installments shall have the right and privilege of paying up the assessment in full at any installment period by paying the full amount of the installments,

together with all accrued interest, and an additional sum equal to one-half the annual interest thereon;''

Reliance is had on the conceded fact that the property owner did not ''enter into an agreement in writing with the municipality that, in consideration of such privilege,'' that is, the privilege of making payment in installments, rather than in cash, ''he will make no objection to any illegality or irregularity with regard to the assessment,'' etc.; it being further provided, as above shown, that, ''in all cases where such assessment has not been signed and filed within the time limited,'' being thirty days after the assessment is made final, ''the entire assessment shall be payable in cash.''

To the plea of the Statute of Limitations, the city filed its replication pleading waiver and estoppel, averring that, ''the defendant, by paying the first, second and third annual installments in full of said assessments as levied and by raising no objection to the maturity dates fixed by the complainant, has waived any right she may have heretofore had to rely on the provisions of the statute above referred to and is now estopped to say that the entire and whole amount of said assessments was due and payable in cash within thirty days from December 20, 1925.''

It will be observed that the statute provides two alternative plans or methods of payment of such assessments, (1) in cash within thirty days, or (2) in ten installments. It expressly and repeatedly characterizes the credit plan as a ''privilege,'' which the property owner may exercise on the sole condition that he enter into a written agreement with the city that ''in consideration of such privilege,'' he will make no objection to the assessment as made. Analyzed, the position assumed by

the defendant is that she complains that the city granted to her this privilege of installment, extension of time, payment without exacting of her the execution of a written agreement that she would not seek to contest the validity of the debt.

She has been granted this privilege and has accepted and acted upon its benefits, and conceding that she had the right to elect whether she would pay in cash, or in installments, there is plausibility in the insistence of the city that she has made her election bindingly, has waived the right, if it was a right which she had, to file a written agreement with the city not to contest the debt, and is now estopped to rely on the plea of the Statute of Limitations.

Counsel for the city cite several decisions from other jurisdictions construing more or less similar statutory provisions, and holding that the failure of the taxpayer to make the payment in cash under that alternative payment plan constitutes an election on his part by which he became bound; and that where he takes benefits under the installment plan, without written notice or agreement, his conduct amounts to ratification of that plan. Among these cases cited on the questions of election, and estoppel are: *Barber Asphalt Pav. Co.* v. *Hayward*, 248 Mo., 280, 154 S. W., 140; *Lexington* v. *Bowman*, 119 Ky., 840, 84 S. W., 1161; *Blake* v. *Spartanburg*, 185 S. C., 398, 194 S. E., 124, 114 A. L. R., 395; *Mercantile Nat. Bank* v. *Chanowsky*, Tex. Civ. App., 89 S. W. (2d), 1068; *City of Kennett* v. *Randol*, Mo. App., 52 S. W. (2d), 217.

While, as insisted for appellant, the statutes and facts considered in these cases differ from those of the instant case, the holdings in these cases tend to support the principles invoked for the city of election and estoppel.

■ However, it becomes unnecessary to discuss and distinguish these authorities, in view of the conclusions hereinafter announced that the appellant may not invoke the Statute of Limitations on the ground invoked by her for another and conclusive reason. We think it plain that the statutory provisions for the making of a written agreement by the taxpayer not to contest the debt is a provision solely for the benefit and protection of the city. The omission of or failure to require it could in no way prejudice the taxpayer. Her right to pay in cash, to choose that alternative method, was in no manner impaired, or abridged. That way, if she chose to follow it, was open to her.

This court has not heretofore passed on the right of the taxpayer to rely on the Statute of Limitations on the ground here advanced, but the principle announced in *Mayor and Aldermen* v. *Davis*, 172 Tenn., 159, 110 S. W. (2d), 337, 338, 113 A. L. R., 1164, appears to have determinative application, by analogy. In that case it was the effect of the acceleration clause which was considered. The section of the Act of 1911 then before us (a similar provision appearing in the Act of 1913) read as follows: "Provided, however, that upon default for the period of thirty days in the payment of any installment and interest thereon the entire unpaid assessment shall immediately become due and payable," etc.

The theory advanced for the taxpayer in that case was that immediately upon default in payment of the first maturing installment the provision for acceleration automatically became operative and the ten year statute began to run from that time on all the remaining installments.

Following decisions in this State and other jurisdictions it was held that this provision was enacted solely

for the benefit of the municipality. It was there urged, as here, that the provision was express in the statute, and was mandatory that this class of tax statutes is to be strictly construed; and effort was made to distinguish that case from previous decisions of this court on the ground that our former cases dealt with notes or mortgages, private contracts, while this was a statutory provision. But the court said: "Nor do we find any reason for applying to a statutory provision a different rule of construction, in the regard under consideration, from that to be given a private contract, as insisted for appellant King. Both are alike for the benefit of the holder; a right to be exercised by him at his option upon default."

In the instant case the municipality had the right by virtue of this provision to refuse to grant to the taxpayer the "privilege" of the installment plan of payment, unless and until the written agreement not to contest the debt had been entered into, and upon the failure or default of the taxpayer in this regard, the city had the right to demand and collect the payment in cash. But, just as with the acceleration clause, the provision was obviously for the benefit of the city, to be exercised or waived at its option. We can find no reason for applying the rule to the provision for acceleration, which does not call for its application to the provision under consideration. The principle involved is the same. In both cases the taxpayer seeks to penalize the city for its indulgence; in the one case for its failure to mature the entire debt by enforcement of the statutory acceleration provision, and in the other for its failure to enforce payment of the entire debt in cash under the pertinent statutory provision.

612

Furthermore, in that case, as in this, subsequent to the default in the making of the payment of the first maturing serial notes, the obligor-taxpayer paid those notes, with accrued interest, and it was held that, on equitable principles, by acceptance of payment the city waived the default and could not have thereafter relied on this default in application of the provision for acceleration. And, it was held that, on the other hand, the taxpayer was cut off from relying on this default as the date of the beginning of the running of the Statute of Limitations. The default had been effectively waived as to both parties.

In the view indicated, that this omission of a written agreement was a default of the city, of which we think it clear that the city could not have taken advantage, after having subsequently accepted payments from the taxpayer on the deferred payment plan, it would seem fairly to follow that the taxpayer could not rely on this default as a basis for support of his plea of the statute.

In concluding the opinion in *Mayor and Aldermen* v. *Davis, supra,* this was said, which has application here:

"Suppose the controversy between the town and this taxpayer were presented in the reverse; that following indulgence to the taxpayer in the enforcement of his payments for five years and a full settlement of all the obligations which had matured to that date according to their terms, on the next day the town had proceeded to foreclose in collection of the remaining installments on the theory here advanced by the taxpayer, that the remaining installments had been matured by the initial default. Would not the taxpayer have been here protesting indignantly and with good reason? If this harsh rule may be invoked by the taxpayer, it works both ways.

"In one of the California court opinions above men-

tioned, it is remarked, in effect, that when a settlement has been fully made of all past-due installments, waiver should be applied to both maker and holder, and both should be held to be estopped from relying on the previous default. . . ."

The decree of the Chancellor is affirmed.