Lawman *et al. v.* Barnett *et al.*

(*Knoxville,* September Term, 1943.)

Opinion filed January 8, 1944.

548

J. B. Milligan and C. G. Milligan, both of Chattanooga, and J. Roy Hickerson, of Winchester, for complainants.

Frazier & Roberts, of Chattanooga, for defendants.

Mr. Justice Chambliss delivered the opinion of the Court.

This is a suit to foreclose a mortgage, in trust deed form, securing purchase money, evidenced by three serial notes, with acceleration provisions, two of which had fallen due more than ten years before this suit was brought, and as to which a plea of the statute of limitations was interposed. The question thus presented, and which we first consider, is one of first impression in this State, and not wholly free from difficulty. It involves construction of Code, Section 8590, subhead, *"Liens on realty barred after ten years,"* and arises out of the following undisputed facts:

As of March 2nd, 1925, the First National Bank of Chattanooga sold and conveyed to Jackson Barnett and wife a tract of land in Rhea County known as "Rhea Springs," for a consideration of $9,000, to secure the payment of which sum the Barnetts executed a mortgage, in deed of trust form, to First Trust and Savings Bank, a corporate subsidiary of the First National Bank,

which was the owner of all its stock. This instrument contained the following recital:

"But this conveyance is made in trust for the following purposes, and not otherwise: To secure the payment by the said parties of the first part to The First National Bank of Chattanooga, Tennessee, of *the just and full sum of Nine Thousand ($9,000.00) Dollars for purchase money,* evidenced by their three (3) several promissory notes of this date payable to the order of The First National Bank of Chattanooga, Tennessee, at its place of business in the City of Chattanooga, Tennessee, and described as follows: Said notes are dated at Chattanooga, Tennessee, March 2nd, 1925, in the principal sum of Three Thousand Dollars each, and mature at Two, Three, and Four Years after date, respectively.

For reasons not necessary for the decision of the question now under consideration to detail, indulgence was shown the Barnetts and no steps were taken to enforce payment of this indebtedness, until January 30th, 1939, when, no part thereof having been paid, the bill in the instant cause was filed seeking a court foreclosure of this mortgage, both the Bank and its subsidiary, the trustee, having become insolvent, and ceased to do business, their assets being in process of liquidation by receivers.

The defendants answered and plead the six-year statute of limitations against personal liability for any portion of the indebtedness, and, further, plead Code, Section 8590, as a bar to the enforcement of the lien of that portion of the mortgage debt represented by the two and three year notes above described, admitting lien liability for the third only of said notes, and offering to pay the same.

Upon the hearing the learned chancellor first over-ruled this plea, and decreed foreclosure for the entire debt; but upon a rehearing he reversed this holding and held that enforcement of the lien was barred as to that portion of the mortgage debt represented by the two notes which had matured more than ten years before the suit was brought. .

The Court of Appeals, opinion by PORTRUM, J., did not pass on this question, raised by an assignment of complainant below, but reversed the chancellor and dismissed the bill, in so far as it sought a forclosure of the mortgage as to any part of this purchase money debt, holding the decree "void" for failure to effectually bring the trustee, in whom the legal title had been vested, before the court. This question we have disposed of in the concluding portion of this opinion. We granted *certiorari* and argument has been heard.

The Code Section above cited reads as follows:

"*Liens on realty barred after ten years.*—Liens on realty, equitable or retained in favor of vendor on the face of a deed, also *liens* of mortgages, deeds of trust, and assignments of realty executed to secure debts, shall be barred, and the liens discharged, unless suits to enforce the same be brought within ten years from the maturity of the debt."

The learned chancellor was of opinion that this ten-year lien limitation began to run against each installment of the mortgage debt whenever a "cause of action accrued" on such installment, or part. He quoted from 41 C. J., p. 871, the following: "*Under a statute conferring the right to foreclose when any installment of a debt secured has matured,* limitation against foreclosure runs from the date of maturity of each installment so far

as it is sought to enforce the lien of the mortgage therefor.''

The text cites only *Nares* v. *Bell,* 66 Neb., 606, 92 N. W., 571, which is the case chiefly relied on by diligent counsel for Barnett. We have italicized in the paragraph above quoted from Corpus Juris the distinguishing language which states the ground on which the opinion in that case is rested, and which the opinion holds, in application of a Nebraska statute, takes it out of the general rule which the opinion recognizes. This general rule is stated in Corpus Juris in a paragraph which immediately follows, for which numerous cases are cited, reading:

''*Effect of right to accelerate maturity.* If the mortgage gives the creditor a right to declare the entire indebtedness due on default in the payment of any installment of interest or principal, or for nonpayment of taxes, the statute does not begin to run from such partial default, but only from the maturity of the full principal, or of the last installment of the principal, unless the creditor has in some way manifested his election to consider the whole as due.''

We quote from the opinion in *Nares* v. *Bell*:

''It is insisted by the defendant in error that, where a mortgage secures a debt payable by installments, the statute does not commence to run against a foreclosure of the mortgage until the last installment has matured; and we are cited to several cases where the debt or the interest reserved upon the debt was payable in installments, and the mortgage contained a clause maturing the whole debt on default in the payment of any installment when due. In the cases cited, it was held that this condition in the mortgage conferred upon the mortgagee a mere option, which he might exercise, or not, at his pleasure; but if he failed to exercise it, and to declare the

debt due before its maturity, as shown by the.face of the contract, that the statute did not commence to run until the debt had fully matured according to the terms of the notes secured by the mortgage. *Watts* v. *Creighton,* 85 Iowa, 154, 52 N. W., 12; *Richards* v. *Daley,* 116 Cal., 336, 48 P., 220; *Mason* v. *Luce,* 116 Cal., 232, 48 P., 72; *Lowenstein* v. *Phelan,* 17 Neb., 429, 22 N. W., 561. In Wood, Limitations, section 224, it is said: 'When a mortgage is payable by installments, the statute attaches to each installment as it becomes due, but the mortgagor's possession does not become adverse until the last installment has matured.' This, we think, announces the true rule. At common law, the mortgagor having by his mortgage conveyed to the mortgagee the legal title to the premises, his possession, if he remain in possession of the estate, is as tenant of the mortgagee; and such possession cannot become adverse or hostile until the full running of the statute after the maturity of the last installment due upon the mortgage. As long as any part of the mortgage debt remains unpaid and not barred, the mortgagee may assert the legal title conveyed to him by the mortgage.'' A marginal note cites *Parker* v. *Banks,* 79 N. C., 480, which we hereinafter discuss.

The court then proceeds to note a Nebraska statute which confers the right upon mortgagees holding debts due in installments to foreclose as each installment matures and construes this statute as depriving the holder of the option accorded him under the foregoing general rule to defer foreclosure until maturity of all the installments, and in application of this statute relates the running of the limitation statute to the maturity of each installment. Says the Court:

''It will be seen from the foregoing that the legal right to foreclose the mortgage accrues as soon as any in-

stallment secured thereby matures. This right does not depend upon an election which the mortgagee may exercise, or not, at his pleasure, but is a right given by statute, and, as we believe, sets in operation the statute of limitations as to any amount due upon the mortgage. This was evidently the view taken by the court in *Cheney* v. *Campbell,* 28 Neb., 376, 44 N. W., 451, and to our minds is the only conclusion which comports with reason and well-established legal principles.''

The learned chancellor referred to our statute, Code, Section 8037, et seq., which makes provision for enforcement by foreclosure of liens upon the falling due of installment payments. He notes, however, a significant distinction, that this statute by its terms is limited to vendor's liens and does not include mortgages and trust deeds. Counsel for Barnett, however, say that it should be construed to include mortgages and trust deeds, and that so construed the instant case falls within the exception applied in *Nares* v. *Bell.*

We are not prepared to so extend our statute by construction. Different principles apply. In vendor liens the title is in the purchaser. In mortgages and trust deeds the title is vested in the mortgagee or trustee for enforcement of the debt. See first quotation above from *Nares* v. *Bell.* Moreover, we think it obvious that our statute was enacted to provide for those cases where no acceleration option had been given by the contract, a situation formerly quite common when purchase money was secured by vendor's liens, as distinguished from the more modern use of securing the debt by mortgage in trust deed form. Where this option is, or may be, expressly provided, the debt holder has a wholly adequate remedy for foreclosure upon defaults of installment payments at his election, without such statu-

554

tory aid, and it cannot be conceived that the legislative intent was to do the wholly useless thing of providing him a remedy which the mortgagee clearly had by express contract. And, furthermore, even should this enabling statute be construed as applying to mortgages and trust deeds, we have heretofore extended the rule that acceleration provisions do no more than confer an option on the holder of indebtedness to cases where the acceleration provisions were statutory. *Mayor & Aldermen of Morristown* v. *Davis*, 172 Tenn., 159, 110 S. W. (2d), 337, 113 A. L. R., 1164, reaffirmed in *City of Jackson* v. *Willett*, 178 Tenn., 605, 611, 162 S. W. (2d) 367, 140 A. L. R., 1437. In the *Davis case* we said (quoted and approved in the *Willett case*): "Nor do we find any reason for applying to a statutory provision a different rule of construction, in the regard under consideration, from that to be given a private contract."

For the reasons indicated, the holding in *Nares* v. *Bell*, so strongly relied on, based on a Nebraska statute, is not authority here.

In a lately filed brief counsel for Barnett cite and quote from *Boynton* v. *Salinger*, 147 Iowa, 537, 126 N. W., 369, 371, to the effect that, "Where a note or bill is made payable in installments, the statute attaches, and begins to run upon each installment as it becomes due," etc., citing cases; and, "A cause of action accrues upon the maturity of each installment, and recovery thereon, either at law or by foreclosure of mortgage or vendor's contract, is barred by the lapse of 10 years," citing cases. But it is well settled, in this and in the majority of jurisdictions, that a mortgage may be foreclosed to enforce payment of the debt secured thereby after the notes secured thereby have been barred. *Irvine* v. *Shrum*, 97 Tenn., 259, 36 S. W., 1089; *Wallace* v. *Goodlett*, 104 Tenn.,

670, 58 S. W., 343; *Hahn* v. *Eckel,* 154 Tenn., 444, at page 449, 289 S. W., 496, and other cases. This principle is well expressed in *Worth* v. *Wrenn,* 144 N. C., 656, 662, 57 S. E., 388, 389: "Equally without support is the suggestion that, if the debt is barred, so must be the mortgage to secure it. These are essentially distinct as affected by the statute of limitations."

The leading case followed by the Iowa court, *Bush* v. *Stowell,* 71 Pa., 208, 10 Am. Rep., 694, dealt with an action on a promissory note, payable in installments. No mortgage was involved. The headnote to that case reads: "In assumpsit on a note payable in instalments, an action may be maintained on each as it becomes due; the statute therefore began to run as soon as such instalment became due." This rule is without application here. Our comment on this case is in accord with that of the Annotator in 82 A. L. R., 320, to the effect that the court left "the result of bringing an action for the debt after all the instalments have fallen due an open question."

Another case relied on for Barnett is *George* v. *Butler,* 26 Wash., 456, 67 P., 263, 57 L. R. A., 396, 90 Am. St. Rep., 756. We find this case cited in 37 Am. Jur., p. 65, for the text reading, "where a mortgage is given to secure several notes which fall due at different dates, the statute of limitations commences to run as to each note at maturity, and, as to an action to foreclose a mortgage thereon, is not postponed until the maturing of the last note." This is the sole case cited by American Jurisprudence and rests on the ground, stated in the opinion, that "The mortgage being a mere incident to the note, and the only purpose being to secure the same, it has fulfilled its purpose, so far as the debt represented by the note is concerned, *when there is no longer a right* of action on the

note." (Italics ours.) This, again, is not the rule in Tennessee, as above shown.

With the suggestion that North Carolina is our Mother State and that the law as declared in that State "should be peculiarly persuasive here," counsel for Barnett call attention to *Meadows Co.* v. *Bryan,* 95 N. C., 398, 142 S. E., 487, 490, from which the brief quotes the following: "The first three notes, secured by the mortgage from E. W. Bryan to Merrill Bryan, matured more than ten years before the commencement of this action; *they are therefore barred* by the statute of limitations, and cannot be paid out of the proceeds of a sale of the 40-acre tract, as against the plaintiffs." (Italics ours.) The facts of this case are involved and we have found analysis of the opinion difficult. We are convinced, however, that here again the above holding turned on the bar of *the notes.* The "action" referred to above was one brought by an administrator of a party, claiming an interest in one of two tracts originally mortgaged "under liens subsequent to the mortgage," against the administrator of the original mortgagor of both tracts. Marshalling of assets was involved.

The judgment below which was reversed, or modified, by the Supreme Court, was that "the aforesaid *notes* and mortgage securing the same are valid and enforceable obligations *against the estate of E. W. Bryan,* and that they are not barred by the Statute of Limitations." (Italics ours.) It was this judgment which was reversed in the language first above quoted from the brief. In its concluding paragraph the court plainly recognizes the continuance of the lien and right to foreclose the mortgage *for all* of the notes originally secured thereby as against the other of the tracts mortgaged, not involved in this administration proceeding. And this was con-

sistent with views expressed in a preceding portion of this opinion, which appears to recognize and endorse the rule stated in the quotation above made from Corpus Juris, that the statute does not begin to run against foreclosure of a mortgage containing optional acceleration provisions until default in payment of all the installments. We quote as follows from page 402 of this opinion in 195 N. C., at page 489 of 142 S. E.:

"A provision in a mortgage or deed of trust by the terms of which the maturity of a note or of notes secured thereby is accelerated, for the purpose of foreclosure, upon a default of the maker, confers upon the mortgagee or trustee an option to foreclose, at the date of such default, by the exercise of a power of sale, contained in the mortgage or deed of trust, or by civil action. This option may be waived by the mortgagee, or by the holder of the notes secured by the deed of trust. In the absence of evidence tending to show some action on the part of the mortgagee, or on the part of the holder of the notes, pursuant to the provision for the acceleration of the maturity of notes not due according to their tenor, at the date of the default, such waiver will be conclusively presumed. In that event, the statute of limitations will not begin to run from the date of such default, and an action to foreclose said mortgage or deed of trust will not be barred, until after the expiration of ten years from the maturity of all the notes secured thereby, notwithstanding the provision for the acceleration of the maturity of notes not due at date of such default. A power of sale contained in a mortgage or deed of trust may be exercised at any time within ten years after the maturity of any note, secured by the said mortgage or deed of trust, according to its tenor, for the purpose of enforcing its payment out of the proceeds of a sale of the land. The

foregoing statement of the law applicable to a decision of the question presented by this appeal is in accord with authoritative decisions of this court.''

Looking to the ''authoritative decisions'' doubtless referred to, we find the principle involved thus laid down in the early and leading case of *Parker* v. *Banks*, 79 N. C., 480, frequently cited with approval. Therein the Court said, directly in point here:

''From what point of time does the statute of limitations begin to run against the mortgagee or his assignee, the plaintiff? This must be determined by the provisions of the mortgage. The notes were given by Pool to Parker for the purchase money of the land mortgaged, and fell due respectively on the first day of January, 1870-'71-'72-'73; and the conditions of the trust are 'to secure the payment to the said Parker of the notes aforesaid, and all interest that may accrue upon them; and the said Parker shall have the right and option at any time after the falling due of one of the first, or any one or more of the notes aforesaid, if the said Pool shall fail to pay the same and interest, to advertise,' etc. The first note, due January 1st, 1870, was paid in June, 1870, and the note due January 1st, 1871, was paid in December, 1871, within less than seven years from the beginning of this suit, which was begun in July, 1877. The condition of the mortgage was a continuing one,—to pay in installments, at several times—and the mortgagee could await the maturity of the last note before an entry and sale, or elect to treat the nonpayment of the first, or any subsequent note at maturity as a forfeiture of the mortgage. . . .

''This doctrine of election to waive or enforce a forfeiture is discussed in *Towle* v. *Ayer*, 8 N. H., 57; and in Angel on Limitations, 470, and notes. The exercise of the

right of election was a matter within the sound discretion of the mortgagee, to be determined by a prudent consideration of the interests of the parties to the trust.''

In *Cone* v. *Hyatt*, 132 N. C., 810, at page 816, 44 S. E., 678, at page 680, *Parker v. Banks* was followed and this language quoted and approved: ''The condition of the mortgage was a continuing one—to pay in installments, at several times—and the mortgagee could await the maturity of the last note before an entry and sale, or elect to treat the nonpayment of the first or any subsequent note at maturity as a forfeiture of the mortgage.'' The reasoning in these cases goes back to the nature of the mortgage contract for purchase money, its singleness as an obligation, continuing so long as the title security and right of possession upon default is vested in the holder of the debt,—the implied option of the holder that thus arises to proceed upon intermediate defaults, or to indulge the debtor and await the final maturity of the whole obligation.

We have not found this principle better stated than in the opinion in *McCarty* v. *Goodsman*, 39 N. D., 389, 167 N. W., 503, 506, L. R. A., 1918F, 160, a case frequently cited, and relied on for petitioner here. In that case two of a series of notes had matured more than ten years before the bringing of the action to foreclose the mortgage for the entire debt, just as in the case at bar. After noting the rule, followed in Tennessee, that the statute barring actions on notes and that barring foreclosure are to be applied independently, that the one may be barred and the other not (see *Runnells* v. *Jacobs*, 100 Tenn., 397, 45 S. W., 980, and cases cited there and hereinabove) the opinion proceeds:

''Thus, the sole question presented by the invocation of the statute of limitations as to the first two notes re-

solves to this: For purposes of foreclosure and the application of the statute of limitations thereto, must the accrual of the right to foreclose be controlled by the majority of a portion of the obligations for which the mortgage is security, or, in the absence of a declaration of an option, may the mortgagee be considered as standing upon the singleness of his cause of action to foreclose? in which case it will be deemed to have first been perfected when the whole debt matures. The mortgage was given to secure *the entire debt* of $700, and the fact that the indebtedness is represented by installment notes, maturing at different dates, cannot affect the creditor's right to stand upon *the singleness of his cause of action to foreclose for the nonpayment of the entire debt,* when all of it shall become due, in case the mortgagee has not elected to treat it all as due upon the default in the payment of an installment. Since it does not appear that the holder of the mortgage declared the whole sum due, it must be assumed that he elected to treat his cause of action to foreclose the mortgage *as a single cause,* which was being held in abeyance, awaiting the maturity of the entire debt. It follows that the right to foreclose the mortgage for the nonpayment of the entire debt of $700 and interest did not arise until the maturity of the last note on October 1, 1906, and that the foreclosure action was not barred as to any portion of such indebtedness. See 27 Cyc. 1560.'' (Italics ours.)

The section of Cyc. cited carries the identical language quoted from Corpus Juris in an earlier portion of this opinion, thus by repetition in a later publication endorsing this statement of the rule and adding citations of additional cases.

A petition to rehear called the attention of the court to a statute somewhat similar to that of Nebraska pre-

viously discussed, providing that each installment of a mortgage debt shall be treated as an independent mortgage for purposes of foreclosure and that foreclosure may be had for each as it matures upon default. But the court held to its original opinion, saying:

"Where a mortgage is given to secure an entire sum, it will give rise to a cause of action to foreclose the lien for the entire amount only when the amount becomes due or is declared due under the acceleration clause. This cause of action may be treated by the mortgagee as being single and indivisible, notwithstanding one or more defaults affecting installment notes. The effect of a statute such as that quoted above is merely to secure to the holder or holders of installment notes the right to foreclose the lien of the mortgage applicable to each note by enabling such holder or holders to exercise the power of sale, and to give a right of redemption from any such sale in like manner as if the installments represented successive mortgages."

The annotator in 82 A. L. R., at p. 324, after noting this holding in *McCarty* v. *Goodsman, supra,* cites, apparently *contra, Nares* v. *Bell, Meadows Co.* v. *Bryan,* and *George* v. *Butler,* which we have discussed, as applying to a mortgage on real estate the general rule that the statute begins to run against each installment of an obligation when it matures, but there is no mention of the distinctions pointed out by us, such as that the Nares decision was rested on a construction of a local statute, and the Butler holding that the lien is barred when action on the notes secured are barred.

Apparent conflict in some of the decisions dealing with this subject of limitations arises from a failure to keep in mind the fundamental difference between two rights, the personal obligation of a debt, and the lien obligation

of a mortgage, the one *in personam*, the other *in rem*; the one may be, and often is, divisible; the other is a unit, and indivisible.

We mention two Tennessee cases invoked for Barnett, neither of which is pertinent or helpful. Neither involved Code, Section 8590, the lien bar statute. *Barnes Bros.* v. *Black Diamond Coal Co.,* 101 Tenn., 354, 47 S. W., 498, in so far as it deals with limitation upon actions, merely reannounces the familiar rule that when a promissory note is payable in installments an action may be brought on each installment, that a "cause of action" thus arises. No mortgage was involved, or other lien on land. *City of Knoxville* v. *Gervin,* 169 Tenn., 532, 89 S. W. (2d), 348, 103 A. L. R., 877, was stressed in argument and on the brief for Barnett. It was not the lien bar statute, Code, Section 8590, but 8601, the general statute, which the court considered in that case and held that this statute applied to the front foot assessment payments, and the limitation ran against the municipality. The installment payments were fixed under a statute, Chap. 278, Sec. 7, Pub. Acts 1905, which provided for no acceleration, but expressly conferred an option of payment of installments before maturity *on the taxpayer*.

Confusion arises from the failure to keep clear the difference between Code, Section 8590, before us, under Article II, dealing with limitations of real actions, barring *liens,* and the general limitations statute, Code, Section 8601, under Article III, dealing with limitations of actions other than real. Under Section 8601 an action "shall be commenced within ten years after the" cause of action accrues on the obligation, while by Section 8590 it is *liens* that are barred.

We have reviewed at unusual length cases relied on outside of this State, but this is a Tennessee statute, dis-

tinctive in its wording, and decisions of the courts of other jurisdictions, influenced, in part at least, by local statutes, are not satisfying authority. Code, Section 8590, hereinabove quoted, is in the language of Chapter 9, Acts 1885, modified, so far as pertinent here, only by the insertion of the word "liens" before the word mortgages.

██ This modification serves only to emphasize the purpose of this statute to bar *liens on lands* as distinguished from *liability on notes* evidencing the debt, and thus "quiet titles" thereto, as expressed in the caption of the original act. The life of notes, or other obligations secured, personal liability thereon, is not affected. Limitations applicable thereto had long before 1885 been provided by statutes codified in Sec. 8600. The lien and the personal liability were clearly recognized as independent, as this court has repeatedly held them to be. Either might be barred without affecting the other. The bar of this statute relates to the lien on the land only. Does it not, therefore, follow that in computing the time when this bar takes effect, the beginning point is the "maturity" of *the lien* obligation, rather than of any serial notes, or other instruments, secured thereby? In this view it seems clear that the ten-year limitation within which suit must be brought does not begin to run until full maturity of the right to enforce the lien. So long as the right to enforce the lien has not fully matured, that is, become absolute and complete, which is not until the mortgage secured debt is wholly due,—unless otherwise provided by an acceleration agreement, or compelling statutory provisions for partial foreclosure,—the ten-year limitations period does not begin to run.

As before suggested, in the absence of acceleration provisions, or statutory enabling acts, a mortgagee, or ven-

dor lien creditor, has no clear and unembarrassed right to foreclose his lien until the last installment of the debt secured has matured. How, then, can it be said that the ten-year limitation begins to run until the maturity of this last installment? Until his right to foreclose has accrued?

This construction ties in with holdings from which we have quoted emphasizing the *continuing nature* of a mortgage or trust deed obligation, so long as the title remains vested in the mortgagee or trustee; the "singleness of the cause of action to foreclose" a mortgage or trust deed. As said in a case we have discussed, "this cause of action (the right of foreclosure) may be treated by the mortgagee as being single and indivisible, notwithstanding one or more defaults affecting installment notes." The maturity of one of these installment payments, whether of interest or principal, except where the option under an acceleration provision has been exercised, is not the maturity of the mortgage foreclosure right upon and from which the ten-year limitation begins to run.

This view is in accord with the expressed intent of this enactment, as before noted, which was to quiet, or clear land titles from encumbrances. Certainly so long as any part of a debt secured by mortgage or trust deed remains enforceable no title is clear or quieted,—the encumbrance remains; indeed, the title is outstanding. It was to meet this situation that this act was passed.

Summing up, we have found, first, that (1) the life of the lien liability,—the right to foreclose for the debt secured thereby, and (2) the life of the personal liability,—the right to enforce this liability for the debt evidenced thereby, are wholly independent rights. Second, that it follows that the time from which the limitation on the right to enforce the one is not governed

by the maturity of the other. Third, that it is the bar of the mortgage lien which alone is prescribed by Code, Section 8590; while it is Code, Section 8600, which prescribes the bar of the personal obligation. And, fourth, that under Code, Section 8590, the limitation on the right to foreclose the mortgage lien does not begin to run until the maturity of all of the debt secured thereby, no optional right of acceleration having been exercised by the creditor. Consistently therewith, we hold, on the facts of the instant case, that the right to foreclose the mortgage lien did not mature, and the ten-year limitation did not begin to run, until the maturity date of the third and last of·the serial notes given for the purchase of this land.

Counsel urge upon us expressions in our opinions, and elsewhere, to the effect that statutes of limitation are looked upon with favor, as statutes of repose; that this statute should be construed liberally to effect its purpose. What is the true purpose of such statutes? To promote, not to impede justice. For use not as a sword, but a shield. In a leading California case, dealing with the effect of an acceleration clause, *California Savings & Loan Soc.* v. *Culver,* 127 Cal., 107, 59 P., 292, 293, the Court says:

"Statutes of limitation are intended to prevent stale claims from springing up after the lapse of long periods of time, to the surprise of parties, or their representatives, when loss of papers, deaths of witnesses, and worn-out recollections make the presentation of the actual facts in the case impossible or extremely difficult, and are not intended as defenses to just demands of comparatively recent origin. Still, as such statutes must necessarily fix definite periods of time, they uphold defenses which are clearly within them, however unjust and unconscionable

such defenses may be. But where, in cases like those last mentioned, the facts relied on leave it greatly in doubt whether or not the defense is within the clause of the statute pleaded, a court will not indulge in a strained construction in order to support it."

Do the facts of the instant case invoke, in equity, a construction in favor of the debtor not compelled by the terms of the Act? There is no suggestion on this record of staleness, or surprise, loss of evidence, no question even suggested that the debt involved is not just and unpaid. It is admitted that the lien of this mortgage to secure the purchase money for the property as to a portion of this debt remains unimpaired. These parties have never paid one dollar for the property. They occupied it for years, during which they were indulged by the holder of the debt, at their own repeated and urgent request, and this continued up to the bringing of this suit. If their present position is maintained, the result is to take from the creditors now holding these obligations thousands of dollars for which the defendants have given no consideration whatever. If there was ever a case in which substantial justice would be defeated by sustaining a plea of the statute, this is that case.

We are of opinion, as above indicated, that no part of the lien of this mortgage was barred until ten years after the maturity of, not a part, but all of the debt secured; that this is the fair intendment of the words "maturity of the debt,"—the lien secured debt. If the intention of the lawmakers had been to have this bar apply to the maturity of parts or installments of the debt, it would have been easy to say so. It results that this plea of the statute of limitations is overruled.

There remains to be disposed of an assignment by Petitioner Lawman challenging the decree of the Court

of Appeals holding the chancellor's foreclosure decree "void" and dismissing the bill, as to this purchase money debt. This decree of the Court of Appeals was rested on the sole ground that the trustee holding the legal title had not been brought before the court.

Pending disposition of this cause on appeal,—delayed by changes in the personnel of the court, the death of one and illness of others,—a federal agency, the T. V. A., has taken possession of and acquired title to the lands involved, and has deposited the cash consideration therefor for distribution among the beneficiaries, as their respective rights may be established. So that the issue of divestiture of the legal title out of the trustee, which is the sole ground of the alleged necessity for having the trustee before the court, has become practically moot, as suggested from the Bench upon the argument. In Gibson's Suits in Chancery, Sec. 120, p. 134, the reason for having the trustee before the court is thus clearly stated in a paragraph discussing suits to enforce mortgages, trust deeds, etc.: "All persons having a legal or equitable title to the property or the proceeds of the property charged with the lien, should be made parties, so that when the property is sold the purchaser may get a perfect title, and the proceeds of the sale be properly distributed among those thereunto entitled, according to their respective rights." Where the "reason" for the rule fails of application, the rule fails.

This naked trustee, without beneficial interest, holding the legal title for the purpose only of making sale of the lands upon default, at the instance of the mortgagee, no longer has any right, claim or title which it could hereafter successfully assert, and it is essential to divest in order to perfect title in the purchaser. If it should be assumed, which does not appear, that this trustee had

acquired by its tenure beneficial interests of money value, based on administrative expenditures, or a claim to compensation, such rights or interests are held to be personal property. *Sanders* v. *Hall*, 8 Cir., 74 F., 399, 403, citing cases.

The record discloses that this corporate trustee had become insolvent and its assets were being administered by a receiver; that this receiver entered his appearance and disclaimed and renounced all claims or rights by virtue of this trusteeship. Whether this action of the receiver was effective to bring the corporate trustee before the court for the purpose of divestiture of its legal title, or not, certainly it was effective to release all its beneficial rights and interests, in accordance with the rule above noted. So that the trustee may, under the present conditions, be eliminated from consideration.

In another view, it may properly be held not essential that this trustee should be brought before the court in order to divest the legal title. This in application of the doctrine of estoppel, which this court applies to a grantee under a deed of absolute conveyance where the equities so demand. This was recognized in the early case of *Howard* v. *Huffman,* 40 Tenn. (3 Head.), 562, 563, 75 Am. Dec., 783, although not founded applicable in that case. Under "Title by Estoppel," Shannon's Annotations cites several cases. And see, also, *Howard* v. *Massengale,* 81 Tenn. (13 Lea), 577; *Poindexter* v. *Rawlings,* 106 Tenn., 97, 59 S. W., 766, 82 Am. St. Rep., 869, and other of our cases. And this is the general rule laid down in the text books. For an excellent condensed statement of this rule see 16 Am. Jur., p. 644, Sec. 356. When, as the present situation provides for, the proceeds of this land are distributed among and appropriated by the beneficiaries, this former holder of the mere legal

' title to the land, as the chosen representative of these parties, is, upon the plainest principles of estoppel, bound and precluded from ever thereafter asserting such title.

While perhaps unnecessary to say more, in deference to the urgency and diligence of learned counsel, we add that not only do we not agree with the Court of Appeals that the chancellor's decree of foreclosure was "void," but we do not conceive it to be erroneous. It is well recognized that a Court of Equity has wide discretion in determining who are necessary parties in a case of this sort. Conceding the general rule to require. that a trustee be made a party for the purpose of divesting his title and removing this cloud, the situation here was exceptional. When the record disclosed that this corporate trustee was not only insolvent and had ceased to do business for many years, with such assets as it possessed being administered by a receiver, who appeared and disclaimed and renounced the right or authority to perform the functions of this trust, and that, furthermore, while technically a separate entity, this trustee was a subsidiary, an arm of the mortgagee bringing the suit, which owned all of the capital stock of the corporate trustee, we think the chancellor was well within the discretion and jurisdictional powers vested in him in proceeding as he did. Equity looks thru form to substance. His decree was not "void," but binding, not only on the parties, but on the trustee. As said in Jones on Mortgages (8th Ed.), Vol. III, Sec. 2035, p. 488: "If the party owning the real beneficial interest in the land is made a party to the action, a foreclosure decree against him is binding on the Trustee who holds the naked title, although nòt a party to the action." In *Anderson* v. *Alexander*, 184 Cal., 265, 266, 193 P., 241, a case cited by Jones, in which the failure to bring in the

trustee was relied on, the Court said, "The real party in interest was before the court." And so, in *Green* v. *Gaston,* 56 Miss. 748, where the trustee had not been made a party, that able Court said: "The naked legal title is in the trustee. The parties beneficially interested are before the court. The execution of the trust by a decree of the court will supersede the trustee and present a ground for restraining him, if he should ever assert his legal title." And this is particularly the rule in a case like the one before us, where equitable estoppel would apply, as above stated.

In conclusion of this phase of this case, it is not inappropriate to repeat what we recently said in another case (*Metropolitan Life Ins. Co.* v. *Moore,* 167 Tenn., 620, 625, 72 S. W. (2d), 1050, 1051,): "The modern tendency in all progressive jurisdictions is away from formal defects and distinctions, not affecting the merits."

The decree of the Court of Appeals is reversed and the cause is remanded for such further orders and decrees as may be necessary to disburse the proceeds in accordance with this opinion.